Marianne Dugan
**ATTORNEY AT LAW**
259 E. 5th Ave., Suite 200-D
Eugene, OR 97401
541-338-7072
mdugan@mdugan.com

Timothy M. Bechtold
**BECHTOLD LAW FIRM, PLLC**
PO Box 7051
Missoula, MT 59807
406-721-1435
tim@bechtoldlaw.net

Kristine Akland
**AKLAND LAW FIRM, PLLC**
317 E. Spruce St.
Missoula, MT 59802
406-544-9863
aklandlawfirm@gmail.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES,<br><br>                           Plaintiff,<br><br>     v.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS, UNITED STATES BUREAU OF RECLAMATION, and BONNEVILLE POWER ADMINISTRATION.<br>                         Defendants. | Cause No. 3:16-cv-01407-HZ<br><br><br>PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS |

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION AND LEGAL BACKGROUND.................................................................2

SUMMARY OF ARGUMENT...........................................................................................3

STANDARD OF REVIEW................................................................................................6

LEGAL ARGUMENT.......................................................................................................7

I.     Plaintiff has Properly Alleged Specific and Concrete Facts that Satisfy All Elements Necessary to Establish Article III Standing.................................7

     a.   Alliance Satisfies the "Injury-In-Fact" Requirement of Article III Standing because the Complaint Alleges that Defendants Violated § 7(a)(2), § 7(a)(2) Protects Alliance's Concrete Interest by Ensuring Dam Operations do not Adversely Affect Critical Habitat, and the Failure to Consult Harms Alliance's Interest............................................8

     b.   Alliance Satisfies the "Causation" and "Redressability" Requirements for Article III Standing because Alliance has Shown that Procedural Requirements of § 7(a)(2) Protect its Interest in Protecting Native Aquatic Habitat and Bull Trout Critical Habitat.....................................13

II.    Defendants' Submission of Biological Assessments for 8 Dams does not Moot Alliance's Claims because Defendants have not Satisfied their Duties Under § 7(a)(2) and this Court Can Still Provide Effective Relief By Requiring the Issuance of a Biological Opinion.........................................15

III.   Prudential Mootness does not require dismissal of Alliance's Complaint because Defendants' mere pledge to re does not satisfy their duty under § 7(a)(2) ...........................................................................................18

CONCLUSION...............................................................................................................20

# TABLE OF AUTHORITIES

**CASES**                                                                                                                                         **PAGE**

*Alliance for the Wild Rockies v. U.S. Department of Agriculture,*
772 F.3d 592, 601 (9th Cir. 2014) ..............................................................5, 16, 17

*Cantrall v. City of Long Beach,*
241 F.3d. 674, 679 (9th Cir. 2001) ...........................................................................8

*Cf. Fortyune v. American Multi-Cinema Inc.,*
364 F. 3d 1075, 1081 (9th Cir. 2004) ..................................................................... 12

*Chapman v. Pier 1 imports (U.S.) Inc.,*
631 F.3d 939, 954 (9th Cir. 2011) ......................................................................... 12

*Citizens for Better Forestry v. U.S. Dept Agriculture,*
341 F.3d 961,969-970 (9th Cir. 2003). .............................................................7, 8, 12

*Enos v. Marsh,*
616 F.Supp.32, 62 (D.Haw. 1985) ....................................................................... 16

*Forest Guardians v. Johanns,*
450 F.3d 455, 462 (9th Cir. 2006) ....................................................................5, 15, 18

*Hunt v. Imperial Merchant Services, Inc.,*
560 F.3d 1137, 1142 (9th Cir. 2009). ....................................................................5, 18

*Kootenai Tribe of Idaho v. Veneman,*
313 F.3d 1094, 1113 (9th Cir. 2002) ......................................................................7, 13

*Lane County Audubon Society v. Jamison,*
958 F.2d 290, 293 (9th Cir. 1993) .........................................................................3, 18

*Lujan v. Defenders of Wildlife,*
 504 U.S. 555, 560 (1992) ................................................................................4, 7, 10, 13

*Native Ecosystems Council v. Krueger,*
946 F.Supp.2d 1060, 1069 (D. Mont. 2013) ...........................................................9, 10

*Northwest Resources Information Center. v. Bonneville Power Administration,*
25 F.3d 872 (9th Cir.1994) ......................................................................................6

*O'Shea v. Littleton,*

*414 U.S. 488, 496 (1974)* .......................................................................................12

*Safe Air for Everyone v. Meyer,*
373 F.3d 1035, 1039 (9th Cir. 2004) .....................................................................6

*Salmon Spawning & Recovery All. v. Gutierrez,*
545 F.3d 1220, 1229 (9th Cir. 2008). ......................2, 4, 7, 8, 9, 10, 11, 12, 14, 15, 16

*S. Utah Wilderness Alliance v. Smith,*
110 F.3d 724, 727 (10th Cir.1997) ..............................................................5, 18, 19

*Stop H–3 v. Lewis,*
538 F.Supp. 149 (D.Haw.1982)...........................................................................16

*Summers v. Earth Island Inst.,*
553 U.S. 488, 493 (2009) ................................................................................8, 9, 10

*Tenn. Valley Auth., v. Hill,*
437 U.S. 153, 185 (1978) ................................................................................2,3

*Terminal Co. v. Interstate Commerce Commission,*
219 U.S. 498, 515 (1911) ...............................................................................18

*Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv.,*
340 F.3d 969, 974 (9th Cir. 2003) ...............................................................14, 16

*Washington Toxics Coal. v. E.P.A.,* No. C01-132C,
2002 WL 34213031 (W.D. Wash. July 2, 2002). ...........................................3, 5, 18, 19

*Western Watersheds v. Kraayenbrink,*
632 F.3d 472, 485 (9th Cir. 2011). ...............................................................7, 8, 14

*Wilderness Soc. v. U.S. Forest Service,*
630 F.3d 1173 (9th Cir. 2011) ........................................................................7

## **STATUTES**

16 U.S.C § 839f(e)(5). ...................................................................................6

16 U.S.C. § 1532(a)(2). .................................................................................2

16 U.S.C § 1536(a)(2). ...........................................................................5, 15, 16, 17

## **FEDERAL REGULATIONS**

50 C.F.R. § 402.16. .......................................................................................2, 5

50 C.F.R. § 401.14(l)(1). ...............................................................................16

50 C.F.R §§ 402.14(c), (g)(4) .......................................................................16

**OTHER CITATIONS**

75 Fed. Reg. 63,898 (October 18, 2010)...........................................................2


## TABLE OF EXHIBITS


Exhibit 1: Declaration of Michael Garrity

Exhibit 2: Declaration of Jeffrey St. Clair

Exhibit 3: Declaration of Keith Hammer

Exhibit 4: Declaration of Steve Kelly

Exhibit 5: Declaration Gary MacFarlane

Exhibit 6: Declaration Natalie Ertz

Exhibit 7: Declarations of Jeff Juel

Exhibit 8: Alliance's Freedom of Information Act Request to Army Corps of Engineers, June 1, 2016

Exhibit 9: Alliance's Freedom of Information Act Request to Bureau of Reclamation, June 1, 2016

Exhibit 10: Alliance's Freedom of Information Act Request to Bonneville Power Administration, June 1, 2016

Exhibit 11: Alliance's Notice of Intent to File Suit sent to Fish and Wildlife Service, October 24, 2016

## INTRODUCTION AND LEGAL BACKGROUND

Bull trout critical habitat was designated in October 2010. See 75 Fed. Reg. 63,898 (October 18, 2010). Federal Defendants own, operate and/or maintain 22 dams on bull trout critical habitat.[1] Federal Defendants have not reinitiated or completed consultation pursuant to § 7(a)(2) of the Endangered Species Act (ESA) on these dams. 16 U.S.C. § 1532(a)(2). Prior to the irretrievable commitment or resources, § 7(a)(2) requires Federal agencies ensure that their actions are not likely to result in the destruction or adverse modification of critical habitat. *Id*. Alliance filed this suit to compel Federal Defendants to initiate and complete consultation to ensure that the operation and maintenance of the dams do not adversely affect bull trout critical habitat. Alliance's interest would be served by a settlement and Consent Decree with Federal Defendants wherein the Federal Defendants and the Fish and Wildlife Service agree to scheduled submissions of Biological Assessments and Biological Opinions.

Section 7 of the ESA and its regulations state in pertinent part that consultation must be reinitiated where (a) discretionary federal involvement or control has been retained or authorized; and (b) critical habitat has been designated. 50 C.F.R. § 402.16. The duty to reinitiate consultation lies with both the action agency and the consulting agency, here the Fish and Wildlife Service (FWS). *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1229 (9th Cir. 2008). The consultation requirement reflects a "conscious decision by Congress to give endangered species priority over the 'primary missions' of federal agencies." *Tenn. Valley Auth., v. Hill*, 437 U.S. 153, 185 (1978). The purpose of § 7 is to "obtain the expert opinion of wildlife agencies to determine whether the action is likely to jeopardize a listed species or adversely modify its critical habitat and,

---

[1] Plaintiff concedes that Cottage Grove, Fall Creek, Fern Ridge and Green Peter are not on bull trout critical habitat and do not affect bull trout critical habitat.

if so, to identify reasonable and prudent alternatives that will avoid the action's unfavorable impacts." *Id.*

Here, Federal Defendants argue that 1) Plaintiff lacks Article III standing; 2) Plaintiff's claims against 8 of the 22 dams are moot because consultation has been reinitiated; and 3) Prudential mootness requires the dismissal of the remaining dams because the agencies pledge they will consult in the future.[2] The Federal Defendants do not dispute that operation of the 22 dams is "agency action" or that they have a duty to consult due to the designation of bull trout critical habitat. Federal Defendants' failure to reinitiate and complete consultation harms Plaintiff's concrete interest in native aquatic habitat and bull trout critical habitat. *See* Compl. ¶¶ 3, 6, 16, 18, Ex. 1-6. In the Complaint (Doc. 1), Plaintiff alleges that by failing to reinitiate and complete consultation, Federal Defendants, without the expert opinion of the FWS, cannot ensure the dams' operation and maintenance do not adversely modify bull trout critical habitat. *Id.*

Plaintiff's claims are not moot because Federal Defendants' obligation under the ESA does not expire until the FWS issues a biological opinion and consultation is complete. *Lane County Audubon Society v. Jamison*, 958 F.2d 290, 293 (9th Cir. 1993). Lastly, the mere pledge to comply with the ESA in the future does not satisfy Federal Defendants' duty to reinitiate consultation. *Washington Toxics Coal. v. E.P.A.,* No. C01-132C, 2002 WL 34213031, at *9 (W.D. Wash. July 2, 2002). The dismissal of this case would undermine Congress's intent to provide endangered species and their critical habitat priority over the operation of the dams and would allow Federal Defendants the ability to skirt their requirements under § 7 by merely pledging their future compliance.

---

[2] Plaintiff concedes Federal Defendants' final argument regarding this Court's lack of jurisdiction over Federal Defendant Bonneville Power Administration.

## SUMMARY OF ARGUMENT

1. To satisfy Article III § 2 standing requirements, the plaintiff must show 1) injury-in-fact; 2) causation; and 3) redressability. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). To establish "injury in fact," a plaintiff asserting a procedural injury must "show that the procedures in question are designed to protect some threatened concrete interest that is the ultimate basis of his standing." *Salmon Spawning*, 545 F.3d at 1229. Here, Plaintiff has alleged that 1) Federal Defendants violated § 7(a)(2) of the ESA by failing to reinitiate and complete consultation on 23 dams. Compl. ¶3, Ex. 1-7; 2) Section 7(a)(2) protects Plaintiff's interests by ensuring that dam operations do not adversely affect bull trout critical habitat. Compl. ¶ 6, Ex. 1-7; and 3) Noncompliance with § 7(a)(2) harms Plaintiff's interest. Compl. ¶¶ 16,18, Ex. 1-7. Plaintiff has properly alleged facts sufficient to show "injury in fact" to satisfy the requirement of Article III.

The showing of procedural injury lessens a plaintiff's burden on the causation and redressability prongs of the Article III standing inquiry. *Lujan,* 504 at 572 n.7, *Salmon Spawning*, 545 F.3d at 1229. Plaintiff alleged that should Federal Defendants decide to reinitiate and complete consultation, the result would be the assurance that the operation and maintenance does not destroy critical habitat. Comp. ¶19. In their Declarations, Alliance members state that if consultation is initiated and complete on the 22 dams, the Service may find that the dams adversely affect bull trout critical habitat. Ex. 1 ¶17, Ex. 2 ¶ 17, Ex. 3 ¶ 18, Ex. 4 ¶ 18, Ex. 5 ¶ 18, Ex. 6, ¶ 17, Ex. 7 ¶ 17. Defendants may then modify the operation and maintenance to employ reasonable and prudent alternatives to ensure that their actions do not adversely affect the habitat. *Id.* ¶17. However, should this Court rule in favor of the Federal Defendants on this claim, the proper remedy is to grant Plaintiff leave to amend the Complaint to add the text of the Declarations into the body of the Complaint.

2. Section 7 imposes a duty on all Federal agencies and the Secretary to ensure that any action by the agencies will not likely jeopardize the existence of any listed species or result in the destruction or adverse modification critical habitat. 16 U.S.C § 1536(a)(2). The duty to consult lies with both the action agency and the consulting expert agency, FWS. 50 C.F.R. § 402.16. A party asserting mootness has the burden to show that the court cannot provide any effective relief to the plaintiffs. *Forest Guardians v. Johanns*, 450 F.3d 455, 462 (9th Cir. 2006). Section 7(a)(2) claims are not moot until consultation is complete. *Alliance for the Wild Rockies v. U.S. Department of Agriculture*, 772 F.3d 592, 601 (9th Cir. 2014). Defendants have submitted biological assessments for eight of the 22 dams. However, FWS has yet to issue biological opinion for those eight dams. Alliance's claims regarding these dams are still live because the Defendants' duty under § 7 is not complete until a biological opinion is issued. Rather than dismissing claims for the 8 dams, this Court should grant Alliance leave amend the Complaint to add the Fish and Wildlife Service as a Defendant to this suit.

3. The Ninth Circuit has recognized that a court should not have to "dismiss a live controversy as moot merely because it may become moot in the near future." *Hunt v. Imperial Merchant Services, Inc.*, 560 F.3d 1137, 1142 (9th Cir. 2009). Section 7(a)(2) claims are not moot unless and until the action agency "satisfactorily initiates and completes consultation." *Washington Toxics,* 2002 WL 34213031 at *9; *Jamison*, 958 F.2d at 293; *S. Utah Wilderness Alliance v. Smith,* 110 F.3d 724, 727 (10th Cir.1997); *Alliance for the Wild Rockies*, 772 F.3d at 601. Defendants' mere pledge to comply with consultation requirements in the future does not satisfy their duty under § 7(a)(2). *Washington Toxics*, 2002 WL 34213031 at *9.

4. Alliance does not object to this Court's dismissal of Alliance's claims against Bonneville Power Association. Section 9(e)(5) of the Northwest Power Act provides that suits

challenging BPA's "final actions and decisions" shall be filed directly in the U.S. Court of Appeals for the Region, here the Ninth Circuit. 16 U.S.C § 839f(e)(5). The Pacific Northwest Electric Power Planning and Conservation Act gave Ninth Circuit exclusive justification to review any challenge to final action of the BPA administrator taken under ESA. *Northwest Resources Information Center. v. Bonneville Power Administration,* 25 F.3d 872 (9th Cir.1994). "As we have now explicitly held, challenges under the Endangered Species Act to a final action of [BPA] based upon an administrative record must be brought in our court." *Pacific Northwest Generating Co-op. v. Brown,* 38 F.3d 1058, 1064 (9th Cir. 1994). This Court does not have jurisdiction over the claims against Bonneville Power Association.

## STANDARD OF REVIEW

Federal Defendants moved to dismiss Alliance's Complaint under Fed. R. Civ. Pro. 12 (b)(1) - lack of subject matter jurisdiction. Defendants' challenges to Alliance's standing are both facial and factual attacks. *See* Def.'s Mot. To Dismiss, Page 17. In facial attacks, the challenger "asserts that allegations contained in a complaint are insufficient on their face" to invoke jurisdiction. *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004). In factual attacks, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. *Id.* When reviewing the complaint, the court must presume the factual allegations are true and grant the moving party's motion only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *Savage v. Glendale Union High Sch. Dist. No. 205,* 343 F.3d 1036, 1039 n.1 (9th Cir. 2003). Additionally, once the defendant has converted the Motion to Dismiss to a factual motion by presenting affidavits and other evidence, the plaintiff must also present affidavits and other evidence to satisfy its burden of establishing subject matter jurisdiction. *Id at 1039 n.2.*

Rather than filing standing declarations with its Summary Judgment Brief, as Alliance intended, Alliance files Exhibits 1-7 now to aid the Court in determining standing.

## LEGAL ARGUMENT

I.    **PLAINTIFF HAS PROPERLY ALLEGED SPECIFIC AND CONCRETE FACTS THAT SATISFY ALL ELEMENTS NECESSARY TO ESTABLISH ARTICLE III STANDING**

To satisfy Article III § 3 standing requirements, the plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to (or "caused" by) the challenged action of the defendant; and 3) it is likely, not speculative, that the injury will be redressed by a favorable decision by the court. *Lujan,* 504 U.S. at 560–561.

To establish a procedural injury in a § 7(2)(a) suit, the plaintiff must show that 1) the action agency violated certain procedural rules; 2) the rules protect the plaintiff's concrete interest; and 3) it is reasonably probable that the challenged action will threaten their concrete interest. *Citizens for Better Forestry v. U.S. Dept Agriculture*, 341 F.3d 961,969-970 (9th Cir. 2003).

The standard for causation and redressability are relaxed once the plaintiff has alleged a procedural injury. *Lujan*, 504 U.S. at 572 n.2. Plaintiffs alleging procedural injury need only show that they have a procedural right that, if exercised, could protect their concrete interest. *Salmon Spawning*, 545 F.3d at 1229; *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1113 (9th Cir. 2002), abrogated on other grounds by *Wilderness Soc. v. U.S. Forest Service*, 630 F.3d 1173 (9th Cir. 2011); *Western Watersheds v. Kraayenbrink*, 632 F.3d 472, 485 (9th Cir. 2011).

Here, Alliance and its members have alleged through specific facts in the Complaint and Declarations that it has suffered an "injury-in-fact" because 1) the Federal Defendants violated § 7(a)(2) of the ESA; 2) § 7(a)(2) protects their concrete interest in "the protection and preservation of

. . . native plants, fish, and animal life and its naturally functioning ecosystems." Compl. ¶12 ; and 3) the failure to reinitiate and complete consultation . . .  threatens preservation of the native biodiversity of the dams' areas of operation, including its native fish life and its naturally functioning ecosystems." Comp. ¶16.

To establish causation and redressability, Alliance need only show that the requested relief, here that the agency follow correct procedures, could influence the agency's ultimate decision of whether to take a certain action or avoid it. *Salmon Spawning*, 545 F.3d at 1226-1227. Alliance has satisfied the causation and redressability prongs through specific facts in the Complaint and Declarations that § 7(a)(2) protects its interest in bull trout critical habitat and aquatic habitat as a whole. Compl. ¶6.

Alliance has satisfied the requirements to establish standing. The Court should deny Defendants' Motion to Dismiss.

   a. **Alliance Satisfies the "injury-in-fact" Requirement of Article III Standing because the Complaint Alleges that Defendants Violated § 7(a)(2), § 7(a)(2) Protects Alliance's Concrete Interest by Ensuring Dam Operations do not Adversely Affect Critical Habitat, and the Failure to Consult Harms Alliance's Interest**

To satisfy the injury in fact requirement, "a plaintiff asserting a procedural injury must show that the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing."  *Kraayenbrink*, 632 F.3d at 485, *Citizens for Better Forestry*, 341 F.3d at 969, *Cantrall v. City of Long Beach,* 241 F.3d. 674, 679 (9th Cir. 2001). To show this, plaintiffs must allege that 1) the action agency violated certain procedural rules; 2) the rules protect the plaintiff's concrete interest; and 3) it is reasonably probable that the challenged action will threaten their concrete interest. *Citizens for Better Forestry*, 341 F.3d at 969-970.

The plaintiff must show through specific facts that at least one member has concrete interest, connected to specific affected areas of the environment. *Summers v. Earth Island Inst.*

553 U.S. 488, 493 (2009). Standing exists where the plaintiff uses or will use in the future at a specific date, the area affected by the challenged activity and "not roughly in the vicinity of the project site." *Native Ecosystems Council v. Krueger*, 946 F.Supp.2d 1060, 1069 (D. Mont. 2013)(citing *Summers,* 553 U.S. at 498). "This requirement, however, does not prevent plaintiffs from challenging actions with wider geographic effects . . ." *Id*. In *Native Ecosystems*, the defendants argued that plaintiffs must identify specific subareas of a forest in a 100,000-acre project area to establish injury in fact of a timber sale. The court held that by alleging the member has "used the area affected by the challenged activity," the plaintiff has established standing. *Id*. at 1070.

Alleging harm to various interests in species or native fish habitat by the violation of the procedural requirement of § 7 is a "sufficient injury to satisfy the 'case or controversy' requirement of Article III" because reinitiation of consultation protects a concrete interest, the avoidance of harm to the listed species. *Salmon Spawning*, 545 F.3d at 1229. In *Salmon Spawning*, an environmental group with interest in salmon preservation alleged that the State Department and NMFS were obligated by § 7 to reinitiate consultation on a 1999 biological opinion (BiOp) authorizing the U.S. to enter into the Pacific Salmon Treaty with Canada after new information revealed that Canada was taking more salmon than the 1999 BiOp anticipated. The Ninth Circuit found that plaintiffs properly alleged "injury in fact" by alleging that 1) the State Department violated § 7 of the ESA by failing to reinitiate consultation in light of new information; and 2) the requirement that consultation be reinitiated protects a "concrete interest," the avoidance of harm to salmon species. The court further found standing because § 7 consultation is "designed to advance the ESA's overall goal of species preservation, and thus the groups' specific goals regarding

salmon preservation, by ensuring agency compliance with the ESA's substantive provisions. *Id.* at 1225, 1229.

Here, Alliance's claims arise from "specific authorization in the substantive statute." *Lujan*, 497 U.S. at 882. Federal Defendants operate and maintain 22 dams on bull trout critical habitat. All the dams were built and operating prior to the designation. The breadth of the challenge should not undermine Alliance's standing. As required by *Summers* and *Native Ecosystems*, Alliance's declarations here establish that its members use all the rivers and basins affected by the operation and maintenance of the dams and have demonstrated a date-certain of when they intend to visit the specific dam sites in the future. Ex. 1 ¶¶11, 25, 27, 29,31, Ex. 2 ¶¶11, 24, 26, Ex. 3 ¶¶11, 12, 25, 27, Ex. 4, ¶¶ 11, 12, 25, 27, Ex. 5 ¶¶11, 25, Ex. 6 ¶¶11, 24 Ex. 7 ¶¶10, 24. Further, the declarations state that the operation and maintenance of the dams, without reinitiating and completing consultation, could render the dam areas and the entire river basins the dams are located in unsuitable for the Alliance members' use. Ex. 1 ¶ 26, 28, 30, 32, Ex. 2 ¶¶ 25, 27, Ex. 3 ¶ 26, 28, Ex. 4 ¶ 24, 26, 28 Ex. 5 ¶¶ 23, 24 Ex. 6, 7  ¶¶ 22, 23.

Alliance's concrete interests are "the protection and preservation of the native biodiversity of the northern Rockies bio-region, native plant, fish and animal life; and its naturally functioning ecosystems." Compl. ¶12. Further, Alliance's members have an interest in "native wildlife, water quality and aquatic habitat quality of the Defendants' hydroelectric project areas." Compl. ¶17. Bull trout are "native fish" and bull trout critical habitat is their "naturally functioning ecosystems." Protecting bull trout and bull trout critical habitat constitutes "protection and preservation of native biodiversity." Alliance's concrete interests are clearly stated in the Complaint and delineated in the Declarations.

To satisfy the "injury in fact" elements of *Salmon Spawning,* Alliance alleges in its Complaint (and delineates in Declarations) the following: 1) Federal Defendants violated § 7 by failing to reinitiate consultation on the operation and maintenance of 22 dams in light of newly designated critical habitat. Compl. ¶3, Ex 1, 2, 6, 7 ¶13, Ex 3, 4, 5 ¶14, Ex 7, ¶13; 2) Section 7 protects Alliance's concrete interest by ensuring continued operation and management of the dams will not result in the destruction or adverse modification of critical habitat, thereby avoiding harm to naturally functioning ecosystems. Comp. ¶6, Ex 1-7, ¶¶17, 18; and 3) Defendants' failure to consult "threatens the preservation of the native biodiversity of the dams' areas of operations including its native fish life and naturally functioning ecosystems," resulting in the inability to ensure that the continued operation does not result in destruction or adverse modification of bull trout critical habitat. Compl. ¶¶16,18.

The goal of § 7 is to preserve species and their critical habitat, and Alliance's specific goal is protecting and preserving native fish and naturally functioning ecosystems, here bull trout critical habitat. *Salmon Spawning*, 545 F.3d at 1225. The Federal Defendants' noncompliance leaves Defendants unable to ensure and promote those goals.

Alliance does not allege a programmatic challenge to Defendants' agency programs, but rather  Defendants' failure to perform a statutory obligation at 22 specific dams in the Pacific Northwest.  Just as in *Salmon Spawning,* Alliance meets the burden of "injury in fact" because the Complaint alleges that Defendants failed to reinitiate and complete consultation in light of the designation of bull trout critical habitat and that failure harms Alliance's concrete interest in protecting native aquatic habitat and the success of bull trout as a species. The requirement that Defendants reinitiate consultation "protects a concrete interest" of Alliance, the avoidance of harm to

the species, native biodiversity of the dams' areas of operations, native fish life, and aquatic

ecosystems.

  Defendants make a factual argument that Alliance must allege specific facts that demonstrate

injury from each dam listed in the Complaint. Def.'s Mot. Dismiss 13:18-22, 15:1-4. Alliance's

injury stems not only from the failure to reinitiate and complete consultation at each of the dams, but

also from the potential destruction or adverse modification of bull trout critical habitat within the

entire river basins in which the dams are located. Ex 1-7 ¶21. Regardless, even if Alliance must

allege injury from each of the 22 dams specifically, the Declarations from Alliance's members set

forth injuries from each dam's failure to reinitiate consultation. Ex 1 ¶¶11, 25, 27-32, Ex 2 ¶¶11, 24-

27, Ex 3 ¶¶11, 12, 25-28, Ex 4 ¶¶ 11, 12, 25-28, Ex 5 ¶¶11, 25, 26, Ex 6 ¶¶11, 24, 25, Ex 7 ¶¶10, 24,

25.

  Defendants cite *Chapman v. Pier 1 imports (U.S.) Inc*., 631 F.3d 939, 954 (9th Cir. 2011) as

analogous to the case at bar. There, Chapman alleged Pier 1 Imports violated the American with

Disabilities Act (ADA) by erecting barriers and denying him full and equal access. The Court found

that the "injury in fact" requirement was not satisfied because Chapman never alleged what the

barriers were or how they affected his disability to deny him full access. *Chapman v. Pier 1 imports

(U.S.) Inc*., 631 F.3d 939, 954 (9th Cir. 2011).

  *Chapman* is distinguishable from the facts at bar because, primarily, the case at bar is an

ESA § 7 case. *Chapman* involved the application of ADA. The factors to establish "injury in fact" in

an ADA case are not analogous to the factors required in an ESA case. *Cf. Fortyune v. American

Multi-Cinema Inc.*, 364 F. 3d 1075, 1081 (9th Cir. 2004), *O'Shea v. Littleton, 414 U.S. 488, 496

(1974)*("must demonstrate a real and immediate threat of repeated injury"), with *Salmon Spawning,*

545 F.3d at 1225, and C*itizens for Better Forestry*, 341 F.3d at 969-970. This Court should apply

the "injury-in-fact" factors relevant to § 7 of the ESA as recognized by the Ninth Circuit and should not be persuaded by Federal Defendant's unfitting application of the ADA "injury-in-fact" standard. Secondly, Alliance has alleged that its interests in preservation of native fish, including bull trout and bull trout critical habitat, may be harmed through Federal Defendants' failure to reinitiate and complete consultation as required by § 7, satisfying the ADA "injury in fact" requirement if this Court chooses to apply it. Compl. ¶¶3,6,16-18.

The Complaint contains specific allegations establishing that Alliance's members suffered or will suffer harm from the failure to reinitiate consultation as required by § 7(a)(2) at the dams. Thus, Alliance has satisfied the injury-in-fact requirement to establish constitutional standing. The Court should deny Federal Defendants' Motion to Dismiss.

In the alternative, if this Court should find in favor of Federal Defendants on this issue, the appropriate remedy would be to grant Alliance leave to amend the Complaint and incorporate the language from the Declarations into the body of the Complaint. Dismissing Alliance's claims would be a harsh and inappropriate remedy given that Alliance is able to show Article III standing through the Declarations.

 **b. Alliance Satisfies the "Causation" and "Redressability" Requirements for Article III Standing because Alliance has Shown that Procedural Requirements of § 7(a)(2) Protect its Interest in Protecting Native Aquatic Habitat and Bull Trout Critical Habitat**

The showing of procedural injury lessens a plaintiff's burden on the causation and redressability prongs of the Article III standing inquiry. *Lujan,* 504 at 572 n.7 (stating that a "person who has been accorded a procedural right to protect his concrete interest can assert that right without meeting all the normal standards for redressabiliby and immediacy."). Plaintiffs alleging procedural injury need only show that they have a procedural right that, if exercised, could protect their concrete interest. *Salmon Spawning*, 545 F.3d at 1226, *Kootenai Tribe of Idaho*, 313 F.3d  at 1113,

*Kraayenbrink*, 632 F.3d at 485. To establish causation and redressability, plaintiffs need only show that the requested relief, here that the agency follow correct procedures, could influence the agency's ultimate decision of whether to take a certain action or avoid it. *Salmon Spawning*, 545 F.3d at 1126-1227.

The purpose of § 7(a) is to "obtain the expert opinion of wildlife agencies to determine whether the action is likely to jeopardize a listed species or adversely modify its critical habitat. . ." *Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv.,* 340 F.3d 969, 974 (9th Cir. 2003). The uncertainty of whether reinitiation of consultation will benefit Alliance does not undermine its standing. *Id at 1229.*

> That it is uncertain whether reinitiation will ultimately benefit the groups (for example, by resulting in a "jeopardy" determination) does not undermine their standing. The asserted injury is not too tenuously connected to the agencies' failure to reinitiate consultation. And a court order requiring the agencies to reinitiate consultation would remedy the harm asserted.

*Salmon Spawning* 545 F.3d at 1229.

Here, Alliance alleges that "Defendants' failure to reinitiate and complete consultation . . . threatens the preservation of the native biodiversity of the dam's areas of operations, including its native fish life and naturally functioning ecosystems." Compl. ¶16. Alliance has alleged that the relief requested could influence Defendants' action:

> The injuries to Alliance and its members are likely to be redressed by a favorable decision of this Court because Alliance is seeking an order declaring that Defendants have violated the ESA and requiring that the Action Agencies reinitiate and complete consultation under the ESA. That would, in turn, ensure that the continued operation and maintenance of the hydroelectric project would not result in the destruction or adverse modification of bull trout critical habitat.

Comp. ¶19.

Further, Alliance declared that should Federal Defendants decide to reinitiate consultation on the 22 dams in bull trout critical habitat, the Federal Defendants might find that the dams adversely

affect bull trout critical habitat and then modify the operation and maintenance in a way that would not adversely affect the habitat. Ex 1-7, ¶¶17, 18.

Even if after the Federal Defendants reinitiate consultation, they determine that there is no adverse impact to critical habitat, this does not undermine Alliance's standing. Just as in *Salmon Spawning*, Alliance's injury – the potential destruction of critical habitat and degradation of native fish habitat and the natural ecosystem – is directly related to the Federal Defendants' failure to reinitiate consultation. Should this Court order Federal Defendants to reinitiate consultation, Alliance's harm would be remedied. *Salmon Spawning,* 545 F.3d at 1229.

Alliance has properly satisfied its requirement under Article III, and has established 1) injury-in-fact, 2) causation; and 3) redressability. This Court should deny Federal Defendant's Motion to Dismiss because Alliance has standing to sue under the ESA.

II.    **DEFENDANTS' SUBMISSION OF BIOLOGICAL ASSESSMENTS FOR 8 DAMS DOES NOT MOOT ALLIANCE'S CLAIMS BECAUSE DEFENDANTS HAVE NOT SATISFIED THEIR DUTIES UNDER § 7(A)(2) AND THIS COURT CAN STILL PROVIDE EFFECTIVE RELIEF BY REQUIRING THE ISSUANCE OF A BIOLOGICAL OPINION.**

The party claiming mootness has the burden to show that the court cannot provide any effective relief to the plaintiff. *Forest Guardians,* 450 F.3d at 462. Section 7 imposes a duty on all Federal agencies and the Secretary to ensure that any action by the agencies will not likely jeopardize the existence of listed species or result in the destruction or adverse modification of such species habitat. 16 U.S.C § 1536(a)(2) ("Each Federal agency *shall*, in consultation with and with the assistance of the Secretary, insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species." (emphasis added). It mandates both that the action agency consult with the expert wildlife agency, here the Fish and Wildlife Service, and that the Service conclude consultation by issuing a BiOp prior to carrying

out any action that may affect critical habitat. *Id* at § 1536(b)(3)(A), *Turtle Island Restoration Network,* 340 F.3d at 974.

Formal consultation begins with a written request from the action agency and is terminated with the issuance of the biological opinion. 50 C.F.R. § 401.14(l)(1). "Upon the issuance of a no jeopardy biological opinion, FWS has completed its duties and the consultation process ends." *Enos v. Marsh,* 616 F.Supp.32, 62 (D.Haw. 1985)(*citing Stop H–3 v. Lewis,* 538 F.Supp. 149 (D.Haw.1982)). In the BiOp, the FWS opines "whether the proposed action, taken together with its cumulative effects, is likely to jeopardize the continued existence of the listed species." *Salmon Spawning*, 545 F.3d at 1223 (citing 50 C.F.R §§ 402.14(c), (g)(4)).

Section 7(a)(2) claims are not moot until consultation is complete. *Alliance for the Wild Rockies*, 772 F.3d at 601. Defendants' citation to *Alliance for the Wild Rockies* is misplaced. In *Alliance for the Wild Rockies*, the Park Service reinitiated consultation by drafting a new biological evaluation (BE) on the effects of a Management Plan, specifically the expansion of a helicopter hazing operation on the Yellowstone grizzly bear. The BE was forwarded to the FWS, which then issued a concurrence. *Id*. at 601.The court found Alliance's § 7(a)(2) claim moot because, "In conducting a second consultation and Biological Evaluation . . . and obtaining a second concurrence from the FWS, the Federal Defendants completed the reinitiating of consultation required by the ESA." *Id.* at 601.

Here, Defendants submitted Biological Assessments (BA) for: Howard Hanson (February 2014), Chandler (April 15, 2015), Roza (April 15, 2015), and Blue River, Cougar, Dexter, Hill Creek and Lookout Point (September 2016)(four months after receipt of Alliance's 60-day Notice of Intent to File Suit). However, unlike the defendants in *Alliance for the Wild Rockies*, Federal Defendants have not received concurrence or a biological opinion from the FWS. Therefore,

Defendants still have not fulfilled their obligation under § 7(a)(2). Without an opinion from the FWS, the expert wildlife agency, the Federal Defendants are unable to ensure that the operation and maintenance of the above 8 dams do not adversely affect bull trout critical habitat. Regardless of their submission of BAs, Federal Defendants are still in violation of 16 U.S.C § 1536(a)(2) because their § 7 duty is not extinguished until the issuance of a biological opinion. *Id.*

Alliance sent FOIA requests to Federal Defendants ACE, BOR and BPA requesting consultation documents from January 2015 to present regarding the dams listed in this Complaint. Ex 8, 9, 10. ACE responded after the Complaint was filed and BOR and BPA have yet to respond to the request, resulting in a FOIA suit currently pending in Montana District Court (CV-16-101-M-DLC). Thus, prior to receiving Federal Defendant's Motion to Dismiss and Ex 7-9 (Doc 25, 25.8-25.9), Alliance was unapprised of Defendants' BA for the eight dams listed and was therefore unaware of this Court's jurisdiction over FWS.  FWS has yet to issue BiOps for these eight dams. Accordingly, Plaintiff has sent FWS and the Department of Interior a 60-day Notice. Ex 11. A claim against FWS will become ripe on December 25, 2016.

Federal Defendants' duties are not relieved until consultation is complete. However, if this Court finds in favor of Defendants on this challenge, rather than dismissing this action regarding the eight dams listed above, the appropriate course of action is to allow Alliance to amend the Complaint to add FWS as a Defendant. With FWS as a Defendant, the Court would then be able provide effective relief by ensuring that both Federal Defendants and FWS comply with their duties under the ESA.

### III.    PRUDENTIAL MOOTNESS DOES NOT REQUIRE DISMISSAL OF ALLIANCE'S COMPLAINT BECAUSE DEFENDANTS' MERE PLEDGE TO REINITIATE CONSULTATION DOES NOT SATISFY THEIR DUTY UNDER § 7(A)(2)

Federal Defendants argue that this Court should dismiss the action for the remaining 14 dams because they plan to initiate consultation in the near future and therefore the likelihood of mootness requires dismissal. Mot. to Diss. 20:17-18, 21:9. Defendants have promised to reinitiate consultation on the 14 remaining dams but have not provided the Court with a BA or BiOp. Doc 25.2. The Ninth Circuit has recognized that a court should not "dismiss a live controversy as moot merely because it may become moot in the near future." *Hunt*, 560 F.3d at 1141. Section 7(a)(2) claims are not moot if the agency has yet to complete consultation. *Washington Toxics*, 2002 WL 34213031 at *9, *Lane County*, 958 F.2d at 293, *S. Utah Wilderness Alliance,* 110 F.3d at 727.

The party who asserts mootness bears the heavy burden of showing that the court cannot provide any effective relief. *Hunt,* 560 F.3d at 1141, *Forest Guardians*, 450 F.3d at 462. The prudential mootness doctrine is recognized when a controversy is "so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." *S. Utah Wilderness Alliance,* 110 F.3d at 727. Both under Article III mootness and prudential mootness doctrines, the inquiry is "whether circumstances have changed since the outset of the litigation so as to preclude any occasion for meaningful relief." *S. Utah Wilderness Alliance,* 110 F.3d at 727. "An exception to the mootness doctrine arises in cases which are capable of repetition, yet evading review." *So. Pacfic Terminal Co. v. Interstate Commerce Commission,* 219 U.S. 498, 515 (1911)*, S. Utah Wilderness Alliance*, 110 F.3d at 729.

Section 7(a)(2) claims are not moot unless and until the action agency "satisfactorily initiates and completes consultation." *Washington Toxics,* 2002 WL 34213031 at *9, *Jamison*, 958 F.2d at 293, *S. Utah Wilderness Alliance,* 110 F.3d at 727. In *S. Utah Wilderness Alliance,* the plaintiff claimed the Bureau of Land Management (BLM) violated § 7(a)(2) by failing to consult on a management plan on land inhabited by a threatened plant species. *Id.* at 725. While the case was pending in district court, the BLM initiated and completed informal consultation with the FWS on the management plan. The Tenth Circuit held that plaintiff's claims became moot because the defendant agency completed informal consultation and received concurrence from FWS. *Id.* at 728. Because the defendant fully satisfied § 7(a)(2), "there is no point in ordering an action that has already taken place." *Id.* at 728. However, the court narrowed its ruling by stating:

> This is not to say that a violation of Section 7(a)(2) could always be cured by subsequent consultation, nor is this general approval for consultation after the fact. Instead, this merely recognizes that the changed circumstances of this particular case no longer present an opportunity for meaningful relief.

*Id.* at 729-30.

Similarly, in *Washington Toxics*, the plaintiff claimed that the EPA failed to initiate consultation with respect to 55 pesticide active ingredients. *Washington Toxics*, 2002 WL 34213031 at *8. EPA argued that its pledge to comply with its proposed schedule mooted plaintiff's § 7(a)(2) claims. The court held that "Section 7(a)(2)'s consultation procedures are mandatory. . . this Court remains capable of granting meaningful relief; plaintiffs' section 7(a)(2) claims are not moot until EPA satisfactorily completes consultation. EPA's pledge to complete consultation per a reasonable schedule does not moot plaintiff's claims." *Id.* at *9.

Unlike *SUWA*, here Defendants have not fully satisfied their obligations under § 7(a)(2) and have not initiated or completed formal consultation on the 14 remaining dams. Just as the EPA claimed in *Washington Toxics*, here Defendants claim that the action agencies anticipate

formal consultation in 2016 and therefore "Plaintiff's claims are likely to become moot by the end of this calendar year". Def.'s Mot. To Dismiss, 20:20-21. However, Defendants have not provided the Court with a BA or a BiOp signifying that they have initiated or completed consultation with the FWS.  Thus, unlike *SUWA,* the current circumstances at bar still allow this Court to grant meaningful relief to Alliance.

This Court should deny Defendant's Motion to Dismiss based on their pledge to comply with § 7(a)(2). Bull trout critical habitat was designated over six years ago. Federal Defendants have yet to issue a BA on the 14 remaining dams and receive a biological opinion on the eight with BAs. An order from this Court requiring Federal Defendants to comply with § 7(a)(2) to initiate and complete consultation by a specified date will provide Alliance with meaningful relief: the guarantee that consultation will happen. Otherwise, Defendants are free to evade their statutory duties by continuing to pledge compliance in the future but never actually reinitiating consultation.

## CONCLUSION

This Court should deny Federal Defendants' Motion to Dismiss because Alliance has standing to sue, Alliance's claims against the 8 dams are live, and the Defendants' mere pledge to comply with § 7(a)(2) in the future does not satisfy their duties under the ESA. Alliance's interest would be served by a settlement with Federal Defendants and Consent Decree wherein the Federal Defendants and the Fish and Wildlife Service agree to scheduled submissions of Biological Assessments and Biological Opinions.

*//*

Dated this 10th day of November, 2016.


Respectfully submitted,

/s/ Kristine M. Akland


Timothy M. Bechtold
Marianne Dugan
Attorneys for Plaintiffs


CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation because it contains 5,989 words including headings, footnotes, and quotations, but excluding caption, certificate of compliance, table of contents, table of cases and authorities, exhibits and signature block.