JOHN C. CRUDEN, Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division
SETH M. BARSKY, Chief
S. JAY GOVINDAN, Assistant Chief
TRAVIS ANNATOYN, Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
(202) 514-5243 (tel)
(202) 305-0275 (fax)

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES ARMY CORPS OF ENGINEERS, UNITED STATES BUREAU OF RECLAMATION, and BONNEVILLE POWER ADMINISTRATION. <br><br> Defendants. | No. 3:16-cv-01407-HZ <br><br> **Federal Defendants'** <br> **REPLY IN SUPPORT OF MOTION TO DISMISS** |

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 3

    I.    The Parties Agree That Several Dams And BPA Are Not
          Properly Subject To This Lawsuit ............................................................................... 3

    II.   Plaintiff's Unsubstantiated, Generalized Dissatisfaction
          With Federal Infrastructure Provides Insufficient Grounds
          For This Court To Adjudicate Plaintiff's Claim For Relief.................................................. 3

        A.   Plaintiff's Complaint Alleges No Facts Showing That Plaintiff Or
             Its Membership Has A Concrete, Particularized "Interest" In Areas
             Near Any Federal Dam, Much Less A "Threatened" Interest ....................................... 4

        B.   Plaintiff's Improperly Submitted Declarations Confirm That Any
             Cognizable Interests In Bull Trout Habitat Are Not Threatened .................................. 8

        C.   Assuming Plaintiff Has Alleged Any Particularized, Concrete,
             And Threatened Interests, There Is No Indication That Such Threats
             Flow From Federal Defendants' Dams ........................................................................ 11

    III.  Plaintiff Cannot Cure Mootness By Speculating As To Claims
          For Relief It Could Have Pled Or Might Later Plead ..................................................... 13

    IV.  Because Federal Defendants Have Prepared And Transmitted
          Biological Assessments For All Dams Identified In Plaintiff's
          Complaint, Each Of Plaintiff's Claims Are Now Constitutionally
          Moot Rather Than Prudentially Moot............................................................................ 17

CONCLUSION............................................................................................................................... 18

# I INTRODUCTION

Plaintiff's Complaint presents a vague, essentially theoretical attack against an array of individually unique dams, reservoirs, and related facilities (hereinafter referred to as "dams") which provide for the Pacific Northwest's flood control, irrigation, recreation, water supply, and renewable, carbon-free energy. In particular, the Complaint speculates that Plaintiff or its membership may be harmed in some unspecified fashion by one or more of 22 dams spread across Montana, Idaho, Oregon, and Washington, citing Federal Defendants' alleged failure to "reinitiate and complete" consultation under the Endangered Species Act ("ESA") following the United States Fish and Wildlife Service's ("Service") revision of critical habitat for bull trout.[1] As we explained in our motion to dismiss, Plaintiff's overbroad, roughly-hewn pleadings necessitate dismissal for at least three reasons: (1) Plaintiff has challenged both a federal agency (the Bonneville Power Administration, or "BPA") over which this Court lacks jurisdiction, and has directed its attack against federal dams outside bull trout critical habitat; (2) Plaintiff's ill-defined, generalized displeasure with Federal Defendants' dams is insufficient to show that Plaintiff has standing to seek relief with respect to even a single such dam, and; (3) any dispute alleging a failure to "reinitiate and complete" ESA consultation is moot, since Federal Defendants have already initiated consultation and have no procedural ability or authority to "complete" that process.

At every turn, Plaintiff's Response to our motion only confirms that the Court should dismiss this lawsuit. Beyond conceding that its Complaint improperly targets several dams and BPA, Plaintiff proffers two theories as to why the Court should adjudicate Plaintiff's claim for

---

[1] Plaintiff's Complaint initially named 26 such dams, but their responsive briefing clarifies that Plaintiff now seeks relief vis-à-vis 22 dams. See ECF No. 29 ("Pl.'s Resp") at 1 .1

*Alliance for the Wild Rockies v. United States Army Corps of Engineers,*                                    1
NO. 3:16-CV-01407-HZ, REPLY IN SUPP. OF MOT. TO DISMISS

1  relief notwithstanding a lack of jurisdiction.  First, Plaintiff argues that its "interest would be
2  served by a settlement and Consent Decree . . . wherein the Federal Defendants and the Fish and
3  Wildlife Service" – an agency not before the Court – "agree to scheduled submissions of
4  Biological Assessments and Biological Opinions."  Pl.'s Resp. at 1.  Putting aside the fact that
5  Federal Defendants have *already* submitted Biological Assessments to the Service, Plaintiff's
6  first theory of jurisdiction has no basis in law: The existence of a justiciable controversy turns on
7  whether a plaintiff has alleged an actual case or controversy *independent* of litigation, not
8  whether a plaintiff is capable of manufacturing such a controversy by filing a complaint and
9  thereafter leveraging that lawsuit for purposes of settlement.  See, e.g., La Asociacion de
10 Trabajadores de Lake Forest v. Lake Forest, 624 F.3d 1083, 1088 (9th Cir. 2010) ("An
11 organization . . . cannot manufacture [] injury by incurring litigation costs . . . .") (citation
12 omitted).  Here, for example, Plaintiff may not will federal jurisdiction into existence merely by
13 expressing a desire for a court-monitored consent decree.

14         Plaintiff also argues against dismissal on the theory that a series of alternative, as-yet
15 unfiled pleadings might not be vulnerable to standing and to mootness arguments.  Thus,
16 Plaintiff has attempted to buttress its insufficient pleadings with several standing declarations,
17 and further contends that claims against the Service – or unpled claims under disparate sections
18 of the ESA – might not be moot.  At bottom, this bait-and-switch response is unpersuasive not
19 simply because Federal Defendants' motion attacks only those pleadings *actually* before the
20 Court, but also because even Plaintiff's hypothetical pleadings cannot reduce Plaintiff's
21 sweeping, abstract campaign against federal dams to an actual case or controversy amenable to
22 federal judicial resolution.  Accordingly, the Court should dismiss Plaintiff's Complaint for want
23 of jurisdiction.

# ARGUMENT

## I. The Parties Agree That Several Dams And BPA Are Not Properly Subject To This Lawsuit

Our opening brief explained that the Court should dismiss Plaintiff's claims against BPA (because the Ninth Circuit enjoys exclusive jurisdiction over claims challenging actions and decisions of that agency) and as against several dams (because the dams do not even lie within designated bull trout critical habitat). See ECF No. 25 ("Defs.' Mot.") at 6 n.4, 8, 21-22. Plaintiff has conceded each of these issues, and – independent of the remaining jurisdictional defects in Plaintiff's Complaint – the Court should therefore issue an order dismissing BPA from this lawsuit and clarifying that Plaintiff's claims for relief do not encompass Cottage Grove, Fall Creek, Fern Ridge, and Green Peter dams. See Pl.'s Resp. at 1 n.1

## II. Plaintiff's Unsubstantiated, Generalized Dissatisfaction With Federal Infrastructure Provides Insufficient Grounds For This Court To Adjudicate Plaintiff's Claim For Relief

The concessions offered by Plaintiff in its Response are symptomatic of a more fundamental defect in Plaintiff's Complaint:  Plaintiff, a relatively localized organization focused primarily on forestry litigation in Montana, is displeased only with the vague *idea* that somewhere, somehow, the Pacific Northwest's multipurpose dams might affect bull trout habitat in some yet-to-be-determined fashion.  Plaintiff's Complaint alleges no facts showing that it or its membership has an interest in bull trout or bull trout habitat, or that the dozens of dams identified in Plaintiff's Complaint have any relationship to that habitat.  (Indeed, Plaintiff has never alleged even a *general* relationship between dams and aquatic species of any sort.) Unsurprisingly, therefore, Plaintiff's Complaint is not at all tailored to the 22 dams against which it seeks relief, and Plaintiff's Response – including Plaintiff's improperly tendered declarations – utterly lack the factual content that might link those dams with Plaintiff's membership. See

Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1551 (2016), as revised (May 24, 2016); Ariz. Christian Sch. Tuition Org. v. Winn, 563 U.S. 125, 132 (2011); Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009).

As we detailed in our opening brief, the generalized, unsubstantiated stock language in Plaintiff's Complaint and in its Response means that this lawsuit is not a case or controversy capable of adjudication by a federal court. In particular, Plaintiff's check-the-box approach to standing is incompatible with Article III's requirements that the complaining party demonstrate both an injury in fact and that defendant's conduct has caused such an injury. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992). And while the shortcomings in Plaintiff's Complaint would foreclose standing in even the simplest dispute, the breadth of Plaintiff's claim for relief makes this litigation a textbook justification for the standing inquiry. The dams implicated by Plaintiff's Complaint provide clean energy, irrigation, flood control, and recreation for tens of millions of people across four states, and the Court should entertain the possibility of granting relief as against such vital infrastructure only where a plaintiff can demonstrate a real stake in each project's operation. Were this otherwise, federal courts would ultimately come to oversee day-to-day operations of the Pacific Northwest's infrastructure in a fashion normally reserved for Congress and the Executive, with attendant burdens for all three branches of government. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 892–93 (1990). As we detail below, it is to prevent just such an outcome that Plaintiff's lawsuit should be dismissed for lack of standing.

### A. Plaintiff's Complaint Alleges No Facts Showing That Plaintiff Or Its Membership Has A Concrete, Particularized "Interest" In Areas Near Any Federal Dam, Much Less A "Threatened" Interest

As Plaintiff correctly notes, a party asserting a procedural injury in fact – such as an injury flowing from an alleged violation of ESA Section 7 – "must show that the procedures in

1  question are designed to protect some *threatened concrete interest of his* that is the ultimate basis

2  of his standing." WildEarth Guardians v. U.S. Dep't of Agric., 795 F.3d 1148, 1154 (9th Cir.

3  2015) (emphasis added). See also Summers v. Earth Island Inst., 555 U.S. at 496.("deprivation

4  of a procedural right without some concrete interest that is affected by the deprivation—a

5  procedural right *in vacuo*—is insufficient to create Article III standing"). The showing

6  demanded by Article III is no simple matter in this litigation, since Plaintiff's Complaint

7  implicates an enormous diversity of federal multipurpose dams throughout four states: While the

8  Constitution poses no absolute bar to the adjudication of large-scale environmental challenges, a

9  plaintiff must nonetheless allege particular interests, in particular locales, for each action

10  implicated by its claim for relief, and may not rely on general allegations of "harm to the

11  environment." See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167,

12  181 (2000) ("[t]he relevant showing for purposes of Article III standing . . . is not injury to the

13  environment but injury to the plaintiff"). In this case, therefore, Plaintiff must tailor its factual

14  allegations to each of the challenged dams or projects. See Summers, 555 U.S. at 496.

15  ("Accepting an intention to visit the National Forests as adequate to confer standing to challenge

16  any Government action affecting any portion of those forests would be tantamount to eliminating

17  the requirement of concrete, particularized injury in fact.").

18      Plaintiff's Complaint does not satisfy this requirement because the Complaint fails to

19  plead specific facts showing (1) that Plaintiff or it members possess a "concrete interest" in bull

20  trout or bull trout critical habitat near any one of the several unique dams at issue in this lawsuit;

21  or (2) that those interests are in any way "threatened." WildEarth Guardians, 795 F.3d at 1154.

22  Plaintiff's *only* allegations to this end consist entirely of conclusory, boilerplate legalisms

23  presented without any supporting facts, and there is accordingly no reason to conclude that

Plaintiff retains "such a personal stake in the outcome of the controversy as to warrant [*its*] invocation of federal-court jurisdiction" with respect to even a single dam, much less with respect to the panoply of infrastructure described in Plaintiff's Complaint. Summers, 555 U.S. at 493 (emphasis in original).

Plaintiff's responsive briefing all but concedes the issue, failing to identify a single factual allegation in its Complaint that might correspond to the challenged dams, bull trout, or threats to the species' critical habitat. Thus, for example, Plaintiff's Response notes that the organization has alleged an interest in "the northern Rockies bio-region . . . and [its] naturally functioning ecosystems," but the Response identifies no allegations defining this so-called "bio-region" or its relationship to the challenged dams in Montana, Idaho, Oregon, and Washington, or to bull trout. Pl.'s Resp. at 9 (citing Compl. ¶12).[2] Likewise, Plaintiff's Complaint alleges that Plaintiff's membership "observe[s], enjoy[s], and appreciate[s] native wildlife, water quality, and aquatic habitat of the Defendants' hydroelectric project areas," but the Response is noticeably silent as to which dams or which interests are at stake in this lawsuit. See Compl. ¶17.

In what appears to be an attempt to imbue these conclusory statements with factual content, Plaintiff's Response argues – without any citation to its Complaint – that "bull trout critical habitat is [the bull trout's] 'naturally functioning ecosystem[],'" and that "[p]rotecting

---

[2] Plaintiff may demonstrate standing on its own behalf (organizational standing) or on behalf of its membership (associational standing). Smith v. Pac. Properties & Dev. Corp., 358 F.3d 1097, 1101 (9th Cir. 2004). Defendants note that Plaintiff cannot manufacture organizational standing simply by alleging that Plaintiff itself has some threatened recreational or aesthetic interest in habitat, since Plaintiff – a legal fiction – is incapable of holding such interests. Rather, organizational standing requires that Plaintiff demonstrate "both a diversion of its resources and a frustration of its mission." La Asociacion de Trabajadores de Lake Forest, 624 F.3d at 1088. Plaintiff has not purported to apply this test in its Complaint or Response.

bull trout and bull trout critical habitat constitutes 'protection and preservation of native biodiversity.'" Pl.'s Resp. at 9.  But these statements are themselves entirely non-specific and devoid of factual content, and therefore cannot demonstrate interests in particular dams or nearby habitat.  More to the point, Plaintiff's attempt to paper over gaps in its Complaint with post-hoc argument only confirms that its *pleadings* – the proper focus of the Court's inquiry on a motion to dismiss – allege no particular interest in areas surrounding federal dams.

But even if Plaintiff had alleged such interests in its Complaint or its Response, it is beyond all doubt that Plaintiff's Complaint fails to allege facts showing that such interests are *threatened*.  See Citizens for Better Forestry v. U.S. Dep't of Agric., 341 F.3d 961, 971 (9th Cir. 2003) ("we have described the concrete interest test as requiring a geographic nexus between the individual asserting the claim and the location *suffering* an environmental impact") (emphasis added) (citation omitted).  Pressed on the issue, Plaintiff's Response cites a single, conclusory allegation that Federal Defendants' alleged failure to reinitiate "threatens . . . preservation," Compl. ¶16, but does not identify facts describing how and where such "preservation" is threatened, or how this "preservation" relates to any ability to "observe, enjoy, and appreciate native wildlife, water quality, and aquatic habitat quality."  Compl. ¶17.

No authority permits a Plaintiff to satisfy the injury in fact requirements with this type of paint-by-numbers pleading.  In Summers, for instance, the Supreme Court upheld the dismissal of pleadings which – like Plaintiff's Complaint – simply "assume[d] not only that [plaintiff] will stumble across a project tract . . . subject to the [challenged] regulations, but also that the tract is about to be developed . . . in a way that harms his recreational interests." Summers, 555 U.S. at 496.  So too in Chapman v. Pier 1 Imports (U.S.), 631 F.3d 939, 954-55 (9th Cir. 2011) (*en banc*), which Plaintiff attempts to distinguish solely on the theory that Chapman, a case under the

1   American With Disabilities Act ("ADA"), allegedly applied a unique standard for Article III
2   standing.  That reading is plainly wrong: While the <u>Chapman</u> court noted that a plaintiff seeking
3   injunctive relief (such as an ADA plaintiff) must demonstrate "a real and immediate threat of
4   repeated injury" *in addition* to the normal standing inquiry, <u>id.</u> at 946, the Ninth Circuit
5   ultimately dismissed that plaintiff's complaint not because it failed to show a likelihood of future
6   harm, but because the complaint failed to plead a specific injury in fact under requirements
7   identical to those at play in this case, <u>id.</u> at 954-55.  There is accordingly no reason to depart
8   from the rule set forth in <u>Chapman</u>, especially because Plaintiff has not disputed that the gaps in
9   its pleadings are functionally identical to those in the Ninth Circuit's *en banc* decision.

10  Finally, Plaintiff's heavy reliance on <u>Salmon Spawning & Recovery Alliance v.
11  Gutierrez</u>, 545 F.3d 1220, 1229 (9th Cir. 2008), is unavailing and only emphasizes the
12  shortcomings of Plaintiff's Complaint: Unlike the conclusory allegations in that Complaint and
13  in Plaintiff's Response, the <u>Gutierrez</u> complaint properly alleged procedural injury by offering
14  no less than four categories of detailed, fact-dependent arguments concerning a challenged
15  treaty's effects on federally protected salmon, including a variety of statistical evidence.
16  Conversely, Plaintiff's "allegations" of injury are merely the incantation of certain "magic
17  words" related to Article III, and do not reduce Plaintiff's Complaint to the type of concrete,
18  particularized grievance necessary for this Court to exercise jurisdiction.  Falling well short of
19  the bar in <u>Gutierrez</u>, Plaintiff's Complaint warrants dismissal for failure to allege an injury in
20  fact.

### B. Plaintiff's Improperly Submitted Declarations Confirm That Any Cognizable Interests In Bull Trout Habitat Are Not Threatened

In a tacit admission that its Complaint is defective, Plaintiff has requested that the Court evaluate Federal Defendants' Rule 12 motion not with respect to Plaintiff's pleadings

themselves, but with respect to several declarations attached to Plaintiff's Response.  As an initial matter, Plaintiff's submissions are improper and merit no attention from the Court.  Federal Defendants were careful to note that their attack on Plaintiff's standing was a facial challenge, in which "'the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.'"  Defs.' Mot. at 10 (citing Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004)).  "Whether subject matter jurisdiction exists therefore does not depend on resolution of a factual dispute, but rather on the allegations in [Plaintiff's] complaint," a matter on which Plaintiff's belated submissions shed no light.  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).  See also Lacano Investments, LLC v. Balash, 765 F.3d 1068, 1071 (9th Cir. 2014).

In any event, Plaintiff's declarations only confirm that it has no concrete, particularized dispute with the multiplicity of the dams at issue here.  Even after receiving notice that its Complaint fails to articulate a case or controversy suitable for resolution by this Court, Plaintiff's declarations only muster the type of vague, boilerplate allegations which are scattered throughout its pleadings and which are insufficient to demonstrate standing.  Most obviously, for example, Plaintiff's seven declarations are nearly carbon copies of one another, containing near-verbatim recitations of the declarants' purported interests and alleged threats thereto.  See, e.g., Pl.'s Resp. at 10 (citing "Ex 1-7 ¶¶17, 18").[3]  Those recitations, moreover, are scarcely more specific than those in Plaintiff's Complaint.  While the declarations do tether the Alliance's membership to

---

[3] In what is evidently a product of Plaintiff's heavy reliance on a template for its declarations, one declarant professes an intent to visit "both" of three dams (Dexter, Hills Creek, Lookout Point).  See ECF No. 29-4 ¶26.  Because neither the declarant nor Plaintiff specifies which two dams are at issue in that testimony – and aside from the flaws outlined above – Plaintiff has not offered relevant testimony on any Article III interests attendant to Dexter, Hills Creek, and Lookout Point dams.

*Alliance for the Wild Rockies v. United States Army Corps of Engineers,*     9
No. 3:16-CV-01407-HZ, REPLY IN SUPP. OF MOT. TO DISMISS

1  particular dams, the declarants *do not* testify or otherwise allege that these locations have

2  suffered or will suffer the "environmental impact" required for an Article III procedural injury.

3  <u>Citizens for Better Forestry</u>, 341 F.3d at 971. Instead, each declaration asserts simply that bull

4  trout critical habitat "could presently be threatened," ECF No. 29-1 ¶16, or "could be harmed,"

5  <u>id.</u> ¶26, and elsewhere ponders what might transpire "*[i]f*" the dams affect bull trout habitat, <u>id.</u>

6  ¶¶22-23. The declarations are entirely silent on the nature and extent of these hypothetical

7  effects, save for the terse, entirely nonspecific testimony that the dams affect both "bull trout

8  critical habitat immediately next to the dams" and "on the entire river basin[s] in which they are

9  located." <u>Id.</u> ¶21.

10       Putting aside these witnesses' obvious lack of firsthand knowledge with respect to "entire

11  river basins," their unsubstantiated testimony concerning hypothetical, unspecified effects to

12  "biodiversity" is nothing more than idle speculation, and is therefore insufficient to satisfy the

13  Article III injury in fact requirement. As noted, a plaintiff alleging a procedural injury in the

14  ESA context must allege particular effects to particular environmental interests, such as when the

15  <u>Gutierrez</u> plaintiffs substantiated their allegations of injury by citing a variety of "new data" in

16  their complaint. 545 F.3d at 1229. But Plaintiff's declarations in this case provide no clues

17  regarding why their declarants' interests in "observ[ing]" and "appreciate[ing]" biodiversity near

18  certain dams are in any way threatened – much less why those interests might be threatened by

19  Federal Defendants' dams – and therefore run afoul of the Supreme Court's repeated

20  admonishment that injuries in fact must not be "conjectural or hypothetical." <u>Spokeo, Inc</u>, 136

21  S. Ct. at 1548. <u>Accord</u> <u>Native Ecosystems Council v. Krueger</u>, 946 F. Supp. 2d 1060, 1069 (D.

22  Mont. 2013) (finding standing where Plaintiff's declarant testified that he used a specific project

23  area for "wildlife observation and study, hiking, camping, and quiet contemplation in nature" and

articulated particular threats from activities such as "logging, burning, road-building, road use, [and] road reconstruction"). There is, in short, no reason to believe that the recreational or aesthetic interests of Plaintiff's membership are at *any* risk, now or in the future. Particularly because Plaintiff's second attempt to supply constitutionally sufficient allegations fares no better than its first, the Court should dismiss Plaintiff's Complaint for failure to specify an injury in fact at each of the challenged dams or projects.[4]

### C. Assuming Plaintiff Has Alleged Any Particularized, Concrete, And Threatened Interests, There Is No Indication That Such Threats Flow From Federal Defendants' Dams

As with the Article III injury in fact requirement, a plaintiff does not adequately allege causation at the pleading stage by offering bare legal conclusions. Yet that is precisely the course Plaintiff has charted in its Complaint, alleging that Federal Defendants' projects "threaten" "biodiversity" without once defining that "biodiversity" or articulating a possible interaction between federal dams, native species, and the ESA. What is more, Plaintiff's Complaint fails to allege or substantiate any connection between the dams and Plaintiff's *membership*, a fatal omission in light of the Supreme Court's holding that "[t]he relevant showing for purposes of Article III standing . . . is not injury to the environment but injury to the plaintiff." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 181 (2000). Because Plaintiff's Response fails to describe any link between the challenged dams and

---

[4] In any event, Plaintiff's declarations cannot demonstrate standing because the declarants generally do not testify that they were members of Alliance for the Wild Rockies *when this suit was commenced*. Because "standing is determined at the commencement of litigation" – and because Plaintiff may only bring suit on behalf of itself or its membership – any declarants purporting to testify for purposes of Article III standing must demonstrate that they were members of the Alliance when Plaintiff filed its complaint. Missouri ex rel. Koster v. Harris, No. 14-17111, 2016 WL 6803046, at *7 (9th Cir. Nov. 17, 2016). Plaintiff's declarations offer no such testimony, and therefore cannot allege or demonstrate injury in fact, or any other component of the standing inquiry.

Plaintiffs ill-defined "interests" – and because Plaintiff has largely declined to cite or otherwise respond to the authority in our opening motion – we respectfully incorporate our opening argument on causation by reference.

Instead of arguing that it has adequately pled a potential link between its interests and the challenged dams, Plaintiff contends that it need not comply with any such requirement precisely *because* ESA consultation is ongoing. Thus, Plaintiff essentially proposes that it is the duty of the federal government, not Plaintiff, to demonstrate or disprove adverse effects to bull trout – and therefore, ostensibly, to Plaintiff – by undertaking consultation under ESA Section 7. But the Supreme Court has made plain time and again that the "irreducible constitutional minimum" of standing requires *plaintiff* – "the party invoking federal jurisdiction" – to alone justify its appeal to the court's remedial powers. Spokeo, 136 S. Ct. at 1547. See WildEarth Guardians, 795 F.3d at 1154. Neither the ESA "nor any other congressional enactment[] can lower the threshold requirements of standing under [Article III]," absolving Defendants from any obligation to disprove standing as a prerequisite to its Rule 12 motion. Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 512 (1982).

In any event, Plaintiff's ability to allege Article III standing, including causation, is not dependent on Section 7 consultation. As Plaintiff observes, Section 7 consultation works to determine whether agency action will "jeopardize" protected species or "destroy or adversely modify" the species' designated "critical habitat." 16 U.S.C. § 1536(a)(2). But the "jeopardy" and "adverse modification" inquiries are terms of art with no *per se* connection to individual populations of listed species or to discrete components of habitat, much less to the recreational and aesthetic interests which Plaintiff purports to allege as the basis for its standing. 50 C.F.R. § 402.02. Put otherwise, Section 7 consultation does not and cannot function to generate standing

allegations for putative litigants, which is why the Gutierrez and other litigants have no difficulty alleging theories of causation independently of ongoing consultation. 545 F.3d at 1229.

Utterly lacking such allegations, Plaintiff's "theory" of causation is simply that bull trout critical habitat lies near particular dams—nothing in Plaintiff's Complaint or its Response articulates a particular, fact-specific *relationship* between the dams and the habitat or between the habitat and the interests of Plaintiff's membership. The standing inquiry, however, is not satisfied by "ingenious academic exercise[s] in the conceivable," let alone the unadorned speculation laced throughout Plaintiff's Complaint. Summers, 555 U.S. at 499. Because that speculation fails to allege that the Pacific Northwest's multipurpose dams have any connection with Plaintiff's membership, the Court should hold that Plaintiff has failed to adequately allege Article III causation.

### III.  Plaintiff Cannot Cure Mootness By Speculating As To Claims For Relief It Could Have Pled Or Might Later Plead

In our opening memorandum, we showed that Plaintiff's Complaint is moot with respect to the Willamette Basin Project, the Yakima Project, and the Howard A. Hanson Dam because the Court cannot grant Plaintiff its requested relief with respect to those dams. Plaintiff has requested that Federal Defendants "initiate and complete" consultation, but Federal Defendants had already initiated or reinitiated formal consultation for the aforementioned projects before filing their motion to dismiss, 50 C.F.R. § 402.14(c), and, as we have explained, the ESA precludes federal action agencies from themselves "completing" consultation, id. at 402.14(l). These arguments now apply to the Federal Columbia River Power System ("FCRPS") – the only collection of dams for which Federal Defendants had not initiated formal consultation at their time of our motion – because Federal Defendants transmitted a Biological Assessment for the

1  FCRPS to the Service on December 7, 2016. <u>See</u> Ex. 1. In short, the entirety of Plaintiff's

2  lawsuit is now moot.

3  In response, Plaintiff argues that at least two *hypothetical* claims for relief might not be

4  moot. Relying entirely on a 20-year old case from the District of Hawaii, Plaintiff contends that

5  the ESA requires the Service to "complete" consultation. <u>See</u> Pl.'s Resp. at 15 (citing <u>Enos v.</u>

6  <u>Marsh</u>, 616 F. Supp. 32, 62 (D. Haw. 1985)). As an initial matter, the language quoted by

7  Plaintiff appears nowhere in <u>Enos</u>, which explains only that a federal agency's duty under ESA

8  Section 7(d) (*i.e.*, the duty to forebear from certain activities during consultation) terminates

9  when the Service issues a biological opinion. 616 F. Supp. at 62. More importantly, however,

10 the Service is not a party to this action, and Plaintiff cannot overcome the lack of a live case or

11 controversy against the named Federal Defendants by alluding to the obligations of a federal

12 agency currently beyond the Court's jurisdiction. <u>See</u> <u>Dream Palace v. Cty. of Maricopa</u>, 384

13 F.3d 990, 1000 (9th Cir. 2004) ("The question of mootness focuses upon whether we can still

14 grant relief *between the parties* . . . .") (emphasis added) (citation omitted); <u>In re Di Giorgio</u>, 134

15 F.3d 971, 974 (9th Cir. 1998) ("mootness precludes federal court decision of questions that

16 cannot affect the rights of litigants in the case before them") (citation omitted).

17 Plaintiff also contends that a hypothetical claim of substantive violations under ESA

18 Section 7(a)(2) might not be moot. But neither Plaintiff's Complaint nor its Notice of Intent to

19 Sue articulates any such claim, which is distinct from a procedural claim that Federal Defendants

20 have failed to initiate or reinitiate consultation. As the Ninth Circuit has explained, Federal

21 Defendants' *substantive* duty under Section 7(a)(2) is distinct from its *procedural* duty to consult

22 under the ESA's implementing regulations. <u>See</u> <u>All. for the Wild Rockies v. U.S. Dep't of</u>

23 <u>Agric.</u>, 772 F.3d 592, 601 (9th Cir. 2014) (distinguishing Section 7(a)(2) from "further" duty to

1  reinitiate consultation); Conservation Cong. v. Finley, 774 F.3d 611, 615 (9th Cir. 2014).

2  Plaintiff's Complaint consistently alleges that Federal Defendants have violated only the latter

3  duties, which is why neither the Plaintiff nor the Court may treat Plaintiff's claim for relief as a

4  substantive challenge under ESA Section 7(a)(2). See, e.g., Compl. 10-11.

5    Likewise, the Court would lack any jurisdiction over a substantive claim under Section

6  7(a)(2), since Plaintiff never provided notice of such a claim to Federal Defendants. Section 11

7  of the ESA mandates that citizen suits may not commence "prior to sixty days after written

8  notice of the violation has been given to the Secretary, and to any alleged violator" of the Act. 16

9  U.S.C. § 1540(g)(2)(A). Where the alleged violator is a federal agency, such as Defendant

10 agencies, the notice provision operates as waiver of sovereign immunity. Hallstrom v.

11 Tillamook County, 493 U.S. 20, 26–28 (1989). As such, courts apply the notice requirement

12 strictly, and may not waive the provision for equitable, "flexible," or "pragmatic" considerations.

13 Id. See Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation, 143 F.3d 515, 520 (9th

14 Cir. 1998) ("A failure to strictly comply with the notice requirement acts as an absolute bar to

15 bringing suit under the ESA.") (citation omitted).

16    In this case, Plaintiff's Notice of Intent to Sue dwells at length on Federal Defendants'

17 alleged procedural failure under 50 C.F.R § 402.16, but offers only a perfunctory citation to ESA

18 Section 7(a)(2). See, e.g., ECF No. 25-3 at 4. By itself, Plaintiff's failure to identify a particular

19 substantive violation of Section 7(a)(2) forecloses jurisdiction over any such claim. See, e.g.,

20 Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation, 143 F.3d 515, 521 (9th Cir.

21 1998); Ellis v. Bradbury, No. C-13-1266 MMC, 2014 WL 1569271, at *9 (N.D. Cal. Apr. 18,

22 2014). More fundamentally, Plaintiff's Notice articulates no facts tending to show a substantive

23 violation of ESA Section 7(a)(2) at any of the challenged dams, a failure consistent with

1   Plaintiff's similar oversights in its Complaint and in its Response (indeed, Plaintiff's Notice of

2   Intent is so loosely drawn that it includes several dams which Plaintiff now concedes do not lie

3   within bull trout critical habitat[5]).  In leaving Federal Defendants to guess at Plaintiff's

4   understanding of bull trout vis-à-vis federal dams, Plaintiff has invited precisely the type of

5   guesswork Congress sought to avoid when it passed the notice requirement in the first instance.

6   See Ctr. For Biological Diversity v. Marina Point Dev. Co., 566 F.3d 794, 801 (9th Cir. 2009)

7   ("[E]ven at our most lenient we have never abandoned the requirement that there be a true notice

8   that tells a target precisely what it allegedly did wrong, and when. The target is not required to

9   play a guessing game in that respect.").  Accordingly, the Court would lack jurisdiction over

10  Plaintiff's substantive Section 7(a)(2) claims even had Plaintiff actually pled such claims in its

11  Complaint.

12       Because any substantive Section 7(a)(2) claim is not properly before the Court, Plaintiff's

13  attempt to evade mootness by tying that statute to Alliance for the Wild Rockies is beside the

14  point.  772 F.3d at 601.  In any event, Plaintiff has misread that case.  Alliance for the Wild

15  Rockies does *not* hold that reinitiation claims are moot only where a federal agency receives a

16  final determination from the Service, and instead notes that the action agency in that case

17  "reinitiated consultation" simply by preparing a new "biological evaluation."  Because

18  "[r]einitiation of consultation [was] the precise relief sought by Alliance," the Ninth Circuit

19  necessarily determined that preparation of the biological evaluation, by itself, rendered Plaintiff's

20  claim moot.  Id.  The same is true here: Because Plaintiff has only pursued a reinitiation claim

---

[5] Specifically, the Notice inaccurately seeks relief against Cottage Grove, Diablo, Dorena, Fall Creek, Fern Ridge, Green Peter, Mud Mountain, and Upper Baker dams.  Compare ECF No. ECF No. 25-3 at 3 (notice of intent) with ECF No. 29-1 (listing dams challenged as of Plaintiff's Response).

against Federal Defendants – and has never pled a substantive Section 7(a)(2) claim or a claim against the Service – Federal Defendants' preparation and transmission of Biological Assessments for each of the challenged dams renders Plaintiff's Complaint moot in its entirety.

### IV. Because Federal Defendants Have Prepared And Transmitted Biological Assessments For All Dams Identified In Plaintiff's Complaint, Each Of Plaintiff's Claims Are Now Constitutionally Moot Rather Than Prudentially Moot

Unlike Article III mootness, prudential mootness considers only whether a federal court should stay its hand out of comity, including a well-founded reluctance to intrude on ongoing or nearly finished Executive action. Federal Defendants' motion previously argued that the Court should refrain from adjudicating Plaintiff's claims against dams within the FCRPS: Although the Court could have granted relief to Plaintiff with respect to those dams at the time Federal Defendants filed their motion (via an order directing the action agencies to reinitiate formal consultation), Federal Defendants cautioned that any such relief would unnecessarily intrude on the Executive because reinitiation was imminent. Federal Defendants have now, in fact, reinitiated consultation for the FCRPS by developing a Biological Assessment for those dams and transmitting that Assessment to the Service. Accordingly, Federal Defendants no longer rely on their prudential mootness arguments and, as set forth above, instead contend that Plaintiff's claims against the FCRPS are constitutionally moot. See supra at 13-17.[6]

---

[6] Because Defendants no longer advance their prudential mootness arguments, there is no occasion to consider Plaintiff's response thereto. See Pl.'s Resp. at 17-18. Defendants briefly note, however, that Plaintiff's argument on that score appears to conflate constitutional mootness with prudential mootness, contending that a claim is not *prudentially* moot by invoking an exception to the *constitutional* mootness doctrine. In particular, Plaintiff notes that a court may sometimes adjudicate an otherwise constitutionally moot claim when that claim is capable of repetition, yet evades review. Id. (citing S. Utah Wilderness All. v. Smith, 110 F.3d 724, 729 (10th Cir. 1997); Washington Toxics Coal. v. EPA, No. C01-132C, 2002 WL 34213031, at *9 (W.D. Wash. July 2, 2002)). This exception has no relationship to prudential mootness, which considers not whether there exists a justiciable case or controversy, but whether it is appropriate

*Alliance for the Wild Rockies v. United States Army Corps of Engineers,* 17
No. 3:16-CV-01407-HZ, REPLY IN SUPP. OF MOT. TO DISMISS

## CONCLUSION

For the reasons set forth above, the Court should dismiss Plaintiff's Complaint.

DATED: December 8, 2016

>Respectfully Submitted,
>
>JOHN C. CRUDEN,
>Assistant Attorney General
>SETH M. BARSKY, Chief
>S. JAY GOVINDAN,
>Assistant Chief
>/s/ *Travis J. Annatoyn*
>TRAVIS J. ANNATOYN
>Trial Attorney
>U.S. Department of Justice
>Environment & Natural Resources Division
>Wildlife & Marine Resources Section
>Ben Franklin Station, P.O. Box 7611
>Washington, D.C. 20044-7611
>(202) 514-5243 (tel)
>(202) 305-0275 (fax)
>travis.annatoyn@usdoj.gov
>
>Attorneys for Federal Defendants

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 5,591 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

---

for a federal court to decide an otherwise justiciable lawsuit.  Moreover, neither Smith nor Washington Toxics actually applies the "capable of repetition" exception, and the language cited by Plaintiff in each case considers mootness under ESA Section 7(a)(2).  But as we note above, Plaintiff has never pled a Section 7(a)(2) claim nor provided Federal Defendants notice of such a claim.