IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALLIANCE FOR THE WILD ROCKIES,
INC.,

       Plaintiff,

  v.

UNITED STATES ARMY CORPS OF
ENGINEERS, UNITED STATES BUREAU
OF RECLAMATION, and BONNEVILLE
POWER ADMINISTRATION,

       Defendants.

No. 3:16-CV-01407-HZ

OPINION & ORDER

Marianne Dugan
259 E. 5th Ave., Suite 200-D
Eugene, OR 97401

OPINION & ORDER - 1

Timothy M. Bechtold
Bechtold Law Firm, PLLC
P.O. Box 7051
Missoula, MT 59807

Kristine Akland
Akland Law Firm, PLLC
317 E. Spruce St.
Missoula, MT 59802

       Attorneys for Plaintiff

Matthew A. Love
Jenna Mandell-Rice
Van Ness Feldman LLP
719 Second Avenue, Suite 1150
Seattle, WA 98104

       Attorneys for Intervenor-Defendants
       Roza Irrigation District and
       Kennewick Irrigation District

John C. Cruden
Seth M. Barsky
S. Jay Govindan
Travis Annatoyn
U.S. Department of Justice
Ben Franklin Station, P.O Box 7611
Washington, D.C. 20044

       Attorneys for Defendants

HERNÁNDEZ, District Judge:

Plaintiff Alliance for the Wild Rockies, Inc. ("Alliance") brings its case against the United States Army Corps of Engineers ("Corps"), the United States Bureau of Reclamation ("Reclamation"), and the Bonneville Power Administration ("BPA") (collectively "Federal Defendants") for allegedly violating the Endangered Species Act ("ESA" or "Act"). 16 U.S.C. § 1531 *et seq.* Specifically, Plaintiff alleges that twenty-three of the dams that Federal Defendants maintain and operate may affect critical habitat of the bull trout. Plaintiff asks the

Court to order Federal Defendants to reinitiate and complete consultation with the United States Fish and Wildlife Service ("Service") to determine what affect, if any, the dams may have on the bull trout critical habitat. 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.16. Roza Irrigation District and Kennewick Irrigation District intervened in this case as defendants.

Before the Court is Federal Defendants' motion to dismiss Alliance's Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The motion is granted.

## BACKGROUND

Bull trout are native to waters of western North America and "range throughout the Columbia River and Snake River basins, extending east to headwater streams in Montana and Idaho, into Canada, and in the Klamath River basin of south-central Oregon." 75 Fed. Reg. 63,898 (Oct. 18, 2010). Bull trout were once more widespread than they are today and have more specific habitat requirements than other salmonids. *Id.* Most bull trout are migratory, while some "complete their entire life cycle in tributary streams where they spawn and rear." *Id.*

The Service first listed populations of bull trout as "threatened" throughout the region in 1998. 63 Fed. Reg. 31,648 (June 10, 1998). On September 26, 2005, the Service designated "critical habitat" for several populations of bull trout, including some located in the Klamath and Columbia Rivers. Mot. to Dismiss at 9, ECF 25; 75 Fed. Reg. 56, 212 (Sept. 26, 2005). The term "critical habitat," is a term of art that means "geographical area occupied by the species" that contains those physical or biological features "essential to the conservation of the species" and "which may require special management consideration or protection." 16 U.S.C. § 1532(5)(A)(i).

Alliance and another environmental organization challenged the 2005 bull trout designation on numerous grounds in this District and the court granted the Service's request to voluntarily remand the rule and propose a new rule by December 31, 2009. 75 Fed. Reg. 63,898–99; *Alliance for the Wild Rockies, Inc. v. Allen*, No. 04-cv-1813-JO, 2009 WL 2015407 (D. Or.

July 1, 2009).  On October 18, 2010, the Service designated bull trout critical habitat in segments of rivers across Oregon, Washington, Idaho, and Montana. 75 Fed. Reg. 63,898. The Service attributed the decline of bull trout to "habitat degradation and fragmentation, blockage of migratory corridors, poor water quality, past fisheries management practices, impoundments, dams, water diversions, and the introduction of nonnative species." *Id.*

Federal Defendants collectively operate and maintain all twenty-three of the challenged dams across Oregon, Washington, Idaho, and Montana. Mot. to Dismiss at 6–7. The dams, reservoirs, and related facilities primarily affect the Columbia and Willamette rivers. *Id.* They range from massive hydro-electric power plants to much smaller earthfill structures. *Id.* at 1. The dams are used for electricity, flood control, irrigation, water supply, commercial navigation, recreation, and conservation. *Id.* at 1–2.

The Federal Columbia River Power System operates fourteen of the twenty-three dams at issue in this case: Albeni Falls; Bonneville; Chief Joseph; Dworshak; Grand Coulee; Hungry Horse; Ice Harbor; John Day; Libby; Little Goose; Lower Granite; Lower Monumental; McNary; and The Dalles. *See* Mot. to Dismiss Ex. 1. Reclamation operates the Yakima Project which includes the Roza Diversion Dam and the Chandler Dam. Mot. to Dismiss at 7. The Willamette Basin Project is operated by the Corps and comprises thirteen dams throughout the Willamette River basin. *Id.* at 7–8. The Complaint identifies nine Willamette Basin Project dams: Blue River; Cottage Grove; Cougar; Dexter; Fall Creek; Fern Ridge; Green Peter; Hill Creek; and Lookout Point. Compl. ¶¶ 22, 34, 39, ECF 1. The Complaint also identifies the Howard A. Hanson dam operated by the Corps. *Id.* at ¶ 22.

On June 30, 2016, Plaintiff submitted its notice of intent to sue Federal Defendants under the ESA. Mot. to Dismiss. Ex. 3. In its notice, Plaintiff alleged that Federal Defendants "have

never re-initiated or completed consultation to determine whether their operations in and near

designated bull trout critical habitat will adversely affect designated bull trout critical habitat."

*Id.* at 3. Plaintiff filed its Complaint in this Court on July 11, 2016, reasserting its claim that

Federal Defendants have failed to comply with the ESA's procedural requirement to reinitiate

consultation after receiving new information pertaining to bull trout critical habitat from the

Service's 2010 designation. Compl. ¶¶ 47–49. Since the filing of this lawsuit, Federal

Defendants have initiated or reinitiated consultation with the Service regarding all of the

challenged dams. Mot. to Dismiss Exs. 7–9; Fed. Defs'. Reply Ex. 1, ECF 34.

STANDARDS

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure a party may move to

dismiss for lack of subject-matter jurisdiction.

> A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a
> facial attack, the challenger asserts that the allegations contained in
> a complaint are insufficient on their face to invoke federal
> jurisdiction. By contrast, in a factual attack, the challenger disputes
> the truth of the allegations that, by themselves, would otherwise
> invoke federal jurisdiction.

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (internal citation omitted).

The Court must accept the factual allegations contained in the Complaint as true when

determining whether subject matter jurisdiction exists. *Wolfe v. Strankman*, 392 F.3d 358, 362

(9th Cir. 2004). However, when resolving a factual attack on jurisdiction, the court may review

extrinsic evidence without converting the motion to a motion for summary judgment and the

court "need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone*,

373 F.3d at 1039. Once the motion has been converted into a factual motion, the plaintiff "must

furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter

jurisdiction." *Id.* (citation omitted).

OPINION & ORDER - 5

DISCUSSION

As a preliminary matter, Plaintiff concedes that four of the twenty-six dams identified in its complaint are not on bull trout critical habitat and do not affect bull trout critical habitat. Pl. Resp. at 1 n.1, ECF 29. Therefore, the Court dismisses Plaintiff's claims as to Cottage Grove, Fall Creek, Fern Ridge, and Green Peter. In their Motion to Dismiss, Federal Defendants argue that Plaintiff's claim is moot because the relevant agencies have already initiated or reinitiated consultation with the Service for all of the challenged dams. Federal Defendants also argue that Plaintiff has failed to demonstrate Article III standing. Finally, Federal Defendants argue that the Court lacks jurisdiction over Plaintiff's claims against BPA because suits challenging BPA's actions are subject to the exclusive jurisdiction of the Ninth Circuit Court of Appeals under the Northwest Power Act. 16 U.S.C. § 839f(e)(5).

## I.    The Endangered Species Act

The ESA provides a means of conserving ecosystems upon which endangered and threatened species may depend. 16 U.S.C. § 1531(b). To that end, the ESA sets forth a program for conservation. *Id.*  The Act requires that the Service determine whether any species is endangered or threatened and designate critical habitat for those species. 16 U.S.C. § 1533(a)(1), (3)(A)(i). Section 7 of the ESA mandates that each federal agency shall "in consultation with and with the assistance of the Secretary, insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species." 16 U.S.C. § 1536(a)(2). Federal agencies, sometimes referred to as "action agencies," may be required to engage in consultation with the Service. *Id.*

Consultation may be informal or formal. Informal consultation is an optional process whereby the Service may determine that the agency action is not likely to adversely affect a listed species or critical habitat, at which point the Service issues a concurrence, terminates the process, and no further action is necessary. 50 C.F.R. § 402.13(a). Alternatively, if the Service or the action agency determines that the action is likely to adversely affect a listed species or critical habitat, formal consultation is required. 50 C.F.R. § 402.14(a). A federal agency shall initiate formal consultation by submitting a biological assessment. 50 C.F.R. § 402.14(c). The purpose of a biological assessment is to "evaluate the potential effects of the action" on listed species and critical habitat "and determine whether any species or habitat are likely to be adversely affected by the action." 50 C.F.R. § 402.12(a). At the end of the formal consultation process, the Service produces a biological opinion. 16 U.S.C. § 1536(b)(4); 50 C.F.R. §§ 402.14(l)(1), (g)(4). Formal consultation shall be reinitiated if new information reveals that the agency action may affect listed species or critical habitat "in a manner or to an extent not previously considered." 50 C.F.R. § 402.16(b). After the initiation of consultation, the federal agency "shall not make any irreversible or irretrievable commitment of resources" that would prevent the agency from implementing alternative measures that would not jeopardize listed species or adversely modify critical habitat. 50 C.F.R. § 1536(d).

## II.    Mootness

Federal Defendants argue that Plaintiff's Section 7(a)(2) claims are moot because the relevant action agencies have already initiated or reinitiated formal consultation by sending biological assessments regarding bull trout critical habitat to the Service. Mot. to Dismiss at 19. When the Motion to Dismiss was first filed, biological assessments had been submitted for nine

of the challenged dams. *Id.* Today, biological assessments have been submitted and formal consultation has been initiated or reinitiated for the remaining dams. Fed. Defs'. Reply Ex. 1.

Article III of the United States Constitution requires that there be a live "case" or "controversy." A federal court must decide mootness before it can assume jurisdiction. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). "The starting point for analysis is the familiar proposition that 'federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.'" *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (citing *Rice*, 404 U.S. at 246). "[A] suit becomes moot, 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) (citing *Already, LLC v. Nice, Inc.*, 568 U.S. ___, 133 S. Ct. 721, 726 (2013)).

Federal Defendants' reinitiation of formal consultation moots Plaintiff's Section 7(a)(2) claims. Plaintiff contends its Section 7(a)(2) claims are not moot until consultation is complete. Pl. Resp. at 14–15. Plaintiff further argues that this Court can provide effective relief by requiring the issuance of a biological opinion. *Id.* The Complaint requests that Federal Defendants "reinitiate and complete ESA consultation on the 2010 bull trout critical habitat designation." Compl. ¶ 49. In other words, Plaintiff has alleged only a procedural violation of the ESA and has not alleged that the challenged dams violate any substantive provision of the Act. Comp. ¶¶ 46–49; *see also* Mot. to Dismiss Ex. 3 (Plaintiff's notice of intent to sue Federal Defendants alleges only a procedural violation of the ESA). Once more, Federal Defendants have reinitiated consultation regarding bull trout critical habitat and provided the precise relief sought by Plaintiff.

A court from this District previously held that where all of plaintiff's claims allege ESA violations for "failing to reinitiate and complete consultation," those claims were prudentially

mooted when the defendants presented evidence that the relevant agencies had reinitiated consultation with regard to the plaintiff's environmental concerns. *Oregon Nat. Res. Council v. Keys*, No. Civ. 02-3080-CO, 2004 WL 1048168, at *10 (D. Or. May 7, 2004), *report and recommendation adopted*, 2004 WL 1490320 (D. Or. June 29, 2004); *see also Greenpeace Foundation v. Mineta*, 122 F. Supp. 2d 1123, 1128 (D. Haw. 2000) (holding that the action agency's reinitiation of formal consultation mooted plaintiff's Section 7 claim, stating that "it would serve no purpose to order [the agency] to do what it has already done"). Another trial court reached a similar conclusion, holding that the agency's "commencement of consultation is sufficient to moot plaintiffs' claim for failure to consult as required by section 7(a)(2) of the ESA." *American Littoral Soc. v. U.S. E.P.A. Region*, 199 F. Supp. 2d 217, 246 (D.N.J. 2002). In *American Litorral Society*, the trial court reasoned that granting relief declaring that the agency had failed to comply with Section 7 or issuing an injunction would be "purely academic" and would serve no purpose where the agency had already initiated consultation. *Id.* (citing *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 82 F. Supp. 2d 1070, 1079 (D. Ariz.  2000)).

Ninth Circuit case law has not provided a clear answer to whether reinitiation of consultation, by itself, is sufficient to moot a Section 7(a)(2) claim. The Parties' reliance on *Alliance for the Wild Rockies v. United States Department of Agriculture* is misplaced. 772 F.3d 592 (9th Cir. 2014). In *Alliance*, the Parks Service reinitiated consultation by submitting a second biological evaluation to the Service after receiving new information regarding the effects that helicopter hazing may have on Yellowstone grizzly bears. *Id.* at 600–601. The Park Service concluded that the hazing was not likely to adversely affect the grizzly and the Service issued a concurrence. *Id.* The Ninth Circuit held:

> In conducting a second consultation and Biological Evaluation on
> the impact of the Management Plan on Yellowstone grizzly bears,

> and obtaining a second concurrence from the [Service], the federal
> defendants completed the reinitiation of consultation required by
> the ESA. Reinitiation of consultation is the precise relief sought by
> Alliance. *See* 50 C.F.R. § 402.16(b) Accordingly, Alliance's
> section 7 claim is moot.

*Id.* at 602. Unlike the instant case, in *Alliance*, the Service issued a concurrence completing consultation. *Id.* Thus, *Alliance* is not dispositive of the issue of whether reinitiation itself is sufficient to moot a Section 7 claim. Moreover, Plaintiff's reliance on *Southern Utah Wilderness Alliance v. Smith* is misplaced for the same reason. 110 F.3d 724, 728 (10th Cir. 1997) (holding that plaintiff's Section 7 claim was moot where the Service had already issued a written concurrence).

The other cases that Plaintiff relies on do not stand for the proposition that Section 7(a)(2) claims are not moot until consultation is complete. In *Washington Toxics Coalition v. Environmental Protection Agency*, the district court found that the E.P.A.'s "mere pledge to comply" with its proposed consultation schedule did not moot plaintiff's Section 7 claim where the EPA had not even *initiated* consultation. No. C01-132C, 2002 WL 34213031, at *9 (W.D. Wash. July 2, 2002).

In *Lane County Audobon Society v. Jamison*, the plaintiff sought to protect spotted owl critical habitat in western Oregon by to enjoining the Bureau of Land Management ("BLM") from selling certain timber. 958 F.2d 290, 292 (9th Cir. 1992). The plaintiff sought an injunction pending the completion of consultation on BLM's "Strategy" which provided for the sale of timber and conservation of the Northern Spotted Owl. *Id.* The district court enjoined implementation of the Strategy pending consultation but found that the timber sales were not affected by its order and refused to enjoin the sales. *Id.* The Ninth Circuit reversed in part, finding that the timber sale constituted agency action for ESA purposes and enjoined the sale

pending completion of consultation. In sum, *Jamison* is inapposite to the present case because it dealt with a substantive violation of the ESA—"irreversible or irretrievable commitment of resources"—during the consultation period. *Id.* at 294;16 U.S.C. § 1536(d). Here, the Complaint does not allege any parallel substantive violation of the ESA for which the Court could grant relief. Further, Plaintiff did not include a substantive violation in its notice of intent to sue and admits that it alleges only a procedural violation in the Complaint. Mot. to Dismiss. Ex. 3 at 3–4; Pl. Resp. at 3, 6–8.

Plaintiff requests that it be given leave to amend its complaint to add the Service as a Defendant to ensure that it and the Federal Defendants will "comply with their duties under the ESA." Pl. Resp. at 16. Plaintiff argues that when action agencies and the Service have initiated but not yet completed consultation, a challenger could obtain a court order setting the timetable for the submission of biological assessments and biological opinions. *See* Pl's. Resp. at 1, 19. Plaintiff provides no legal support for this position and the language of the statute explicitly states that consultation shall be concluded within ninety days *or* "within such other period of time as is mutually agreeable to the Secretary and the Federal agency." 16 U.S.C. § 1536(b)(1)(A). Further, it is the Service, and not Federal Defendants, that issues the biological opinion. 50 C.F.R. § 402.14(g)(4), (l)(1). "The question of mootness focuses upon whether we can still grant relief between the parties." *Am. Civil Liberties Union of Nevada v. Lomax*, 471 F.3d 1010, 1016 (9th Cir. 2006) (quoting *Dream Palace v. County of Maricopa*, 384 F.3d 990, 999–1000 (9th Cir. 2004)). The Service is not a defendant in this case and giving Plaintiff leave to amend its complaint to add the Service would not cure the problem of mootness. Federal Defendants have satisfied their procedural duty under the ESA by reinitiating consultation and they have provided Plaintiff with the precise relief that it has sought. Compl. ¶ 48 (stating its

claim under 50 C.F.R. § 402.16 which provides for the reinitiation of formal consultation). Because Plaintiff's claim does not satisfy Article III's case or controversy requirement, the Court dismisses it as moot. Accordingly, the Court does not reach the issue of whether Plaintiff has standing.

### III. Bonneville Power Administration

Federal Defendants move to dismiss Plaintiff's claim against BPA on the ground that the Ninth Circuit Court of Appeals has exclusive jurisdiction over such claims. The Northwest Power Act provides that suits challenging BPA's "final actions and decisions" or the "implementation of such actions" shall be filed "in the United States court of appeals for the region." 16 U.S.C. § 839f(e)(5). Plaintiff concedes that this Court does not have jurisdiction of its claims against BPA. The Court dismisses BPA as defendant from this lawsuit.

CONCLUSION

This Court lacks jurisdiction over this matter because there is no live case or controversy. Therefore, the Court dismisses this case as moot.

Dated this _____ day of _____, 2017.


MARCO A. HERNANDEZ
United States District Judge

OPINION & ORDER - 12