IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ALLIANCE FOR THE WILD ROCKIES, INC.,      No. 3:16-CV-1407-HZ
          Plaintiff,

                                          OPINION & ORDER

    v.

U.S. ARMY CORPS OF ENGINEERS, U.S.
BUREAU OF RECLAMATION, and
BONNEVILLE POWER ADMINISTRATION,
          Defendants.

Kristine M. Akland
Akland Law Firm PLLC
P.O. Box 7274
Missoula, MT 59807

Timothy M. Bechtold
Bechtold Law Firm
PO Box 7051
Missoula, MT 59807

Marianne G. Dugan
Attorney at Law
259 E. 5th Avenue, Suite 200-D
Eugene, OR 97401

      Attorneys for Plaintiff

Travis J. Annatoyn
U.S. Department of Justice
601 D. Street, NW
Washington, DC 20004

      Attorney for Defendants U.S. Army
      Corps of Engineers, U.S. Bureau of
      Reclamation, and Bonneville Power
      Administration

Matthew A. Love
Jenna R. Mandell-Rice
Van Ness Feldman LLP
719 Second Avenue, Suite 1150
Seattle, WA 98104

      Attorneys for Intervenor-Defendants
      Roza Irrigation District and Kennewick
      Irrigation District

HERNÁNDEZ, District Judge:

      Plaintiff Alliance for the Wild Rockies ("Alliance") seeks attorneys' fees and costs amounting to $79,873.70 from the United States Army Corps of Engineers, Bureau of Reclamation, and Bonneville Power Administration (collectively "Federal Defendants"). Alliance maintains that it is entitled to an award of attorneys' fees under the Endangered Species Act ("ESA") because its lawsuit allegedly prompted Federal Defendants to conform to ESA requirements by reinitiating ESA consultation regarding dams that potentially affected bull trout critical habitat. Federal Defendants contend that Alliance lacks standing to pursue attorneys' fees and that Federal Defendants were already in the process of reinitiating ESA consultation when Alliance filed suit. Because Alliance has not demonstrated a clear causal relationship between its lawsuit and Federal Defendant's compliance with the ESA, the Court denies Alliance's Motion for Attorney Fees.

# BACKGROUND

On October 18, 2010, the United States Fish and Wildlife Service ("Service") designated several bull trout habitats as "critical." 75 Fed. Reg. 63898. Under the ESA, Federal Defendants were required to initiate consultation with the Service by submitting biological assessments on bull trout critical habitat in the vicinity of their dams. 16 U.S.C. § 1536(a).

On April 8, 2011, Federal Defendants notified the Service that they were "preparing a Biological Assessment on the effects of ongoing operations and maintenance of the Federal Columbia River Power System (FCRPS)." Peters Decl. Ex. 1, at 1, ECF 46. The FCRPS operates fourteen of the twenty-two dams that required consultation. *See* Mot. to Dismiss Ex. 1, ECF 25. In February of 2014, Federal Defendants submitted the biological assessment for the Howard A. Hanson dam in Washington. *Id*. In April of 2015, they submitted biological assessments on two more dams in the Yakima Project. *Id*. In fall and winter 2015, Federal Defendants conducted bi-weekly meetings on biological assessments and drafted a timeline for a review of the remaining FCRPS dams that would take place in 2016. Peters Decl. Exs. 3–4. Federal Defendants anticipated submitting draft biological assessments in May or June of 2016. *Id.* On March 16, 2016, Federal Defendants revised their schedule for the FCRPS assessments, anticipating that they would submit final drafts of the biological assessments incorporating the Service's feedback by April of 2017 and that the Service would issue its biological opinion within 130 days of that submission. Peters Decl. Ex. 9.

On May 6, 2016, Alliance sent Federal Defendants its notice of intent to sue. Mot. Dismiss Ex. 3, at 3–4. The notice alleged that Federal Defendants had not reinitiated consultation regarding bull trout critical habitat. Federal Defendants responded with two letters indicating that

biological assessments on the remaining dams were scheduled for completion in fall 2016. Mot. Dismiss Exs. 4, 6.

Alliance filed its complaint on July, 11, 2016, alleging that its members were harmed by Federal Defendants' failure to reinitiate consultation in areas that they used for recreation and other purposes. Compl. 4–5 ECF 1.The Court Granted Federal Defendants' motion to dismiss on February 22, 2017, finding that they had submitted biological assessments for all of the challenged dams at issue the previous December or earlier. Op. & Order 8, ECF 35; Reply Ex. 1, ECF 34.

On April 17, 2017, Alliance filed a motion for attorneys' fees on the theory that its lawsuit prompted Federal Defendants to reinitiate consultation on their dams. Mot. Att'y Fees 6, ECF 41. Federal Defendants oppose the motion on the grounds that Alliance lacks standing because Alliance's members did not suffer an "injury in fact" and because the lawsuit did not prompt them to conform to ESA requirements. Defs.' Opp'n 2–6, ECF 45.

## DISCUSSION

Alliance seeks attorneys' fees for prompting Federal Defendants to reinitiate ESA consultation on bull trout critical habitat. Federal Defendants argue that Alliance is ineligible for attorneys' fees because it does not have standing and because it was not responsible for Federal Defendants' conformity to ESA requirements. This Court finds that Alliance does have standing, but Alliance is ineligible for attorneys' fees.

I.    **Standing**

A court has no authority to award attorneys' fees if the plaintiff lacks standing. *Skaff v. Meridien N. Am. Beverly Hills*, *LLC*, 506 F.3d 832, 837 (9th Cir. 2007). To have Article III standing, the plaintiff must show that, (1) it suffered an "injury in fact," (2) arising out of the

defendant's conduct, and (3) that the court will likely provide a remedy. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Furthermore, the ESA provides a cause of action to any person "to enjoin . . . any other governmental instrumentality or agency . . . alleged to be in violation of any provision" of the ESA. 16 U.S.C. § 1540(g)(1)(A). Under the ESA, "corporation" is included in the definition of "person." 16 U.S.C. § 1532(13).

Alliance satisfied the traditional Article III standing requirements at the outset of this case and was authorized by the ESA to bring its lawsuit. Alliance maintains that the failure to consult affected its members' use and enjoyment of recreation areas near dams where biological assessments would serve to protect bull trout critical habitat. Compl. 4–5. When the complaint was filed, Federal Defendants had yet to reinitiate consultation with respect to all of the challenged dams and the Court had the authority to provide Alliance with the remedy it sought. Further, the ESA expressly grants a cause of action to Alliance and jurisdiction to the district courts to enforce the Act's provisions and regulations. 16 U.S.C. § 1540(g)(1). In sum, Plaintiff had standing to bring this lawsuit and the Court, in turn, has the authority to award attorneys' fees.

## II.    Attorneys' Fees

Under the ESA's citizen-suit provision, a court "may award costs of litigation . . . to any party, whenever the court determines such award is appropriate." 16 U.S.C. § 1540(g)(4). Whether it is "appropriate" for a plaintiff to receive an award absent a final judgment on the merits is determined in the Ninth Circuit by a two-part catalyst test.[1] *Ass'n of Cal. Water*

---

[1] Alliance contends that an alternative award theory is also appropriate using the "Gorsuch Test." Mot. Att'y Fees 2. The "Gorsuch Test" allows an award of attorneys' fees where the party bringing suit assists in "the interpretation or implementation of the . . . Act." *Alabama Power Co. v. Gorsuch*, 672 F.2d 1, 3 (D.C. Cir. 1982). However, courts in the Ninth Circuit use the "Catalyst Test" to determine if attorneys' fees are appropriate where "a plaintiff does not win a final judgment on the merits." *Ass'n of Cal. Water Agencies v. Evans*, 386 F.3d 879, 885–86 (9th Cir. 2004) (quoting *Greater L.A. Council on Deafness v. Cmty. Television*, 813 F.2d 217, 219 (9th Cir. 1987)).

*Agencies v. Evans*, 386 F.3d 879, 885–86 (9th Cir. 2004). The first part of the test requires that

the plaintiff show a "clear, *causal relationship* between the litigation brought and the practical

outcome realized." *Greater L.A. Council on Deafness v. Cmty. Television*, 813 F.2d 217, 220

(9th Cir. 1987) (quoting *Am. Const. Party v. Munro*, 650 F.2d 184, 188 (9th Cir. 1981)). Courts

consider the order of events in determining whether the plaintiff's suit was a material factor in

the defendant's conformity to law. *Wilderness Soc. v. Babbitt*, 5 F.3d 383, 386 (9th Cir. 1993).

The second part of the test requires "that the benefit achieved . . . [be] required by law."[2] *Greater*

*L.A. Council*, 813 F.2d at 220.

Alliance relies on *Carroll* in arguing that the chronology of events alone warrants this

Court awarding attorneys' fees. Mot. Att'y Fees 6 (citing *Sw. Ctr. for Biol. Diversity v. Carroll*,

182 F. Supp. 2d 944, 949 (C.D. Cal. 2001)). In *Carroll*, the Southwest Center for Biological

Diversity sued the United States Army Corps of Engineers to initiate consultation on the Seven

Oaks Dam, which potentially affected three different endangered species. *Id.* Shortly after the

plaintiff filed its complaint, the defendant offered to reinitiate consultation for only one of the

endangered species. *Id.* at 951. Following settlement discussions, the defendant agreed to

reinitiate consultation for all three species, but without using the appropriate environmental

baselines that the plaintiff was advocating for. *Id.* After further discussions, the defendant

adopted the appropriate environmental baselines. *Id.* Based on that chronology of events, the

court found the plaintiff's lawsuit to be "a substantial catalytic factor" in prompting the

defendant's conformity to federal law. *Id.* at 951–52.

*Carroll* is distinguishable from this case. In *Carroll*, the defendant expressed that it

initially had no intention of submitting two of the required ESA biological assessments. *Id.* at

---

[2] The parties agree that biological assessments are required by law under the ESA, which satisfies the second part of the catalyst test and is not at issue. Defs.' Opp'n, 4.

951. Furthermore, the defendant in that case continued to grant portions of the remedy sought in response to the plaintiff's persistence during negotiations. *Id.* In this case, by contrast, Federal Defendants indicated that they were in the process of reinitiating consultation and that they had set tentative completion dates for that process. Mot. Dismiss Exs. 4, 6. Federal Defendants have also demonstrated that they formulated plans to complete the biological assessments in late 2016 or 2017 before learning of Alliance's threatened litigation. Peters Decl. Exs. 3, 9; Mot. Dismiss Ex 3. Federal Defendants' efforts toward reinitiating consultation are also supported by the fact that they completed assessments on three dams prior to receipt of Alliance's notice. *See* Mot. Dismiss Ex. 1.

In sum, Federal Defendants have provided significant evidence of their planning to submit biological assessments within a timeline that was largely consistent with their plans prior to Alliance's suit. *See* Peters Decl. Exs. 1–4; Mot. Dismiss Ex. 9. Alliance fails to offer anything more than a timeline in attempting to demonstrate a "clear, *causal relationship*" between its suit and Federal Defendants' submission of biological assessments. *Munro*, 650 F.2d at 188. Alliance's timeline does not demonstrate this relationship because it ignores Federal Defendants' conduct and their evidence of a timeline to complete consultation. *See* Mot. Att'y Fees 6. Because Alliance has not satisfied the "clear, causal relationship" requirement, the Court denies its motion for attorneys' fees.

## CONCLUSION

The Court denies Alliance's Motion for Attorney Fees [41].

Dated this ⎰⎰ day of July, 2017.

MARCO A. HERNÁNDEZ
United States District Judge