**NOT FOR PUBLICATION**

**FILED**

AUG 30 2018

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, INC., <br><br> Plaintiff-Appellant, <br><br> v. <br><br> UNITED STATES ARMY CORPS OF ENGINEERS; et al., <br><br> Defendants-Appellees, <br><br> and <br><br> ROZA IRRIGATION DISTRICT; KENNEWICK IRRIGATION DISTRICT, <br><br> Intervenor-Defendants-Appellees. | No. 17-35668 <br><br> D.C. No. 3:16-cv-01407-HZ <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Oregon
Marco A. Hernandez, District Judge, Presiding

Argued and Submitted August 14, 2018
Anchorage, Alaska

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: HAWKINS, McKEOWN, and OWENS, Circuit Judges.

Alliance for the Wild Rockies, Inc. ("Alliance") appeals the district court's order denying its motion for attorneys' fees, contending that its lawsuit was the catalyst for the United States Army Corps of Engineers, the United States Bureau of Reclamation and the Bonneville Power Administration (collectively, "Defendants") to reinitiate consultation with the United States Fish and Wildlife Service ("USFWS") on bull trout critical habitat and thus Alliance should have been awarded fees under the Endangered Species Act's ("ESA") citizen-suit provisions. 16 U.S.C. § 1540(g)(4). We affirm in part, reverse in part, and remand for further proceedings.

When a plaintiff does not win a final judgment on the merits, it may nonetheless be entitled to fees under the ESA if it can satisfy a two-part test: First, the plaintiff must have received some of the benefits sought in the suit, and there must be a "clear, causal relationship" between the litigation brought and the practical outcome realized. *Ass'n of Cal. Water Agencies v. Evans*, 386 F.3d 879, 885-86 (9th Cir. 2004). Second, the court must determine whether "the benefit achieved was required by law and was not a gratuitous act of the defendant." *Greater L.A. Council on Deafness v. Cmty. Television of S. Calif.,* 813 F.2d 217, 220 (9th Cir. 1987).

There is no dispute that Alliance received some of the benefits it sought in the suit, and that the actions taken were required by law and not a gratuitous act of the

Defendants. Thus, the only issue before us is whether Alliance demonstrated a "clear, causal relationship" between its suit and the Defendants' actions. *Id.* at 219-20. We recognize that the chronology of events is an "important, although not a definitive factor, in determining whether or not a defendant can be reasonably inferred to have guided his actions in response to a plaintiff's lawsuit." *Braafladt v. Bd. of Governors of Or. State Bar Ass'n*, 778 F.2d 1442, 1444 (9th Cir. 1985).

It is important to distinguish between the Defendants' actions with respect to the Federal Columbia River Power System ("FCRPS") and the Willamette River Basin Project ("Willamette Project"). With respect to the FCRPS, Defendants presented evidence of various efforts undertaken from 2011 through 2016, especially from 2015 on, including drafts, meetings to discuss the drafts, revisions, timelines and more, which all suggest that Defendants were well on their way to reinitiating formal consultation and complying with their ESA obligations without any nudging from Alliance. We, therefore, affirm the district court's conclusion that there was no "clear, causal relationship," *Evans*, 386 F.3d at 886, between the suit and Defendants' actions on the FCRPS environmental assessment, as it is "plausible in light of the record," *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1196 (9th Cir. 2009).

On the other hand, the record also indicates that with respect to the Willamette Project, a "near final draft" was developed and distributed between 2011 and 2012,

3

but no further action appears to have been taken until after Alliance filed suit in 2016, when the Defendants were apparently "able to provide the necessary staffing in order to complete the near final SBA and submit to FWS to initiate formal consultation." This does little to dispel the strong inference from the chronology that, after four years of inaction on a "near final draft," it was Alliance's suit which prompted the Defendants' action *on this particular project. See Sablan v. Dep't of Fin.*, 856 F.2d 1317, 1326 (9th Cir. 1988) (citation omitted) ("Clues to the provocative effects of the plaintiffs' legal efforts are often best gleaned from the chronology of events: defendants, on the whole, are usually rather reluctant to concede that the litigation prompted them to mend their ways."). In the absence of any indication that the Defendants were actively working to proceed on the Willamette Project environmental assessment absent the suit, we reverse the court's determination of no clear causal relationship and remand for further proceedings.[1]

**AFFIRMED in part, REVERSED in part, and remanded. Each party shall bear its own costs on appeal.**

---

[1] Alliance's Motion to Take Judicial Notice (Doc. 11) is **denied**.