BILLY J. WILLIAMS
United States Attorney
District of Oregon
600 United States Courthouse
1000 S.W. Third Avenue
Portland, OR 97204-2902
Tel:  (503) 727-1000

JEAN E. WILLIAMS, Deputy Assistant Attorney General
SETH M. BARKSY, Section Chief
COBY HOWELL. Senior Trial Attorney
Environment & Natural Resources Division
U.S. Department of Justice
c/o U.S. Attorney's Office
1000 SW Third Avenue
Portland, OR 97204-2902
(503) 727-1000 (Tel.); (503) 727-1117 (Fax)
Email: Coby.Howell@usdoj.gov

*Attorneys for Federal Defendants*

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, INC.,<br><br>     Plaintiff,<br><br> vs.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS and UNITED STATES BUREAU OF RECLAMATION.<br><br>     Defendants. | No.  3:16-cv-01407-HZ<br><br>**FEDERAL DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR ATTORNEY FEES AND OTHER EXPENSES UNDER THE ENDANGERED SPECIES ACT** |

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ....................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................. 1

ARGUMENT .............................................................................................................. 3

I.    Alliance's Lawsuit Did Not Prompt Defendants to Reinitiate Consultation
      on the Willamette Project and Therefore Plaintiff Is Not Entitled to Any
      Attorneys' Fees. .............................................................................................. 4

II.   Plaintiff's Pre-Litigation Notice of Intent to Sue Cannot Establish Entitlement
      to Fees ............................................................................................................. 8

III.  Even If Plaintiff's Suit Did "Catalyze" Defendants' Reinitiation of Consultation,
      Plaintiff Should Not Be Entitled to Appellate Fees ...................................... 10

IV.   Even If Plaintiff Were Entitled to Fees, Plaintiff's Requested Compensation is
      Excessive and Should Be Curtailed ............................................................... 11

      A.   Plaintiff's Time Billed is Excessive, Redundant, and Inappropriate ............. 12

           1.   Excessive Hours ...................................................................................... 12

           2.   Duplicative and Redundant Hours ........................................................... 13

           3.   Inappropriate Hours and Expenses .......................................................... 16

      B.   Plaintiff's Requested Rates Are Excessive .................................................... 17

CONCLUSION ........................................................................................................... 19

# TABLE OF AUTHORITIES

**CASES**                                                     **PAGE**

*All. for the Wild Rockies, Inc. v. U.S. Army Corps of Eng'rs,*
   736 Fed.Appx. 160 (9th Cir. 2018) ..................................................... passim

*All. for Wild Rockies v. United States Dep't of Agric.,*
   2016 WL 4766234 (D. Mont. 2016) ............................................................. 10

*Ardestani v. INS,*
   502 U.S. 129 (1991) ..................................................................................... 8

*Asia Pac. Agric. & Forestry Co. v. Sester Farms, Inc.,*
   2013 WL 6157263 (D. Or. 2013) ................................................................ 14

*Ass'n of Cal. Water Agencies v. Evans,*
   386 F.3d 879 (9th Cir. 2004) ............................................................... 4, 8, 9

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,*
   532 U.S. 598 (2001) ..................................................................................... 4

*Chalmers v. City of L.A.,*
   796 F.2d 1205 (9th Cir. 1986) .................................................................... 13

*Farris v. Cox,*
   508 F. Supp. 222 (N.D. Cal. 1981) ............................................................ 15

*Frevach Land Co. v. Multnomah Cty.,*
   2001 WL 34039133 (D. Or. 2001) ............................................................. 16

*Grendel's Den, Inc. v. Larkin,*
   749 F.2d 945 (1st Cir. 1984) ...................................................................... 15

*Hallstrom v. Tillamook Cty.,*
   110 S. Ct. 304 (1989) ................................................................................... 9

*Hensley v. Eckerhard,*
   461 U.S. 424 (1983) ................................................................. 8, 11, 12, 15

*Hyland v. Indicator Lites, Inc.,*
   160 F. Supp. 2d 981 (N.D. Ill. 2001) ........................................................ 13

*Idaho Watersheds Project v. Jones,*
   253 Fed.Appx. 684 (9th Cir. 2007) .............................................................. 4

*J.C. v. Reg'l Sch. Dist. 10, Bd. Of Educ.*,
   278 F.3d 119 (2nd Cir. 2002) .......................................................... 9

*Johnson v. Ga. Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) .......................................................... 16

*Klamath-Siskiyou Wildlands Ctr. v. MacWhorter*,
   797 F.3d 645 (9th Cir. 2015) .......................................................... 9

*Marbled Murrelet v. Babbit*,
   83 F.3d 1068 (9th Cir. 1996) .......................................................... 9

*McKenzie Flyfishers v. McIntonsh*,
   158 F. Supp. 3d 1085 (D. Or. 2016) .............................................. 13

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ........................................................................ 16

*Native Fish Soc'y v. NMFS*,
   2014 WL 7331039 (D. Or. 2014) .................................................... 13

*Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*,
   675 F.2d 1319 (D.C. Cir. 1982) ...................................................... 18

*Ruckelshaus v. Sierra Club*,
   463 U.S. 680 (1983) .......................................................................... 4

*S. Yuba River Citizens League & Friends of River v. Nat'l Marine Fisheries Serv.*,
   2012 WL 1038131 (E.D. Cal. 2012) .............................................. 14

*Sam K. ex rel. Diane C. v. Haw. Dep't. of Educ.*,
   788 F.3d 1033 (9th Cir. 2015) ........................................................ 18

*State of N.H. v. Adams*,
   159 F.3d 680 (1st Cir. 1998) ............................................................ 9

*Taylor v. Albina Cmty. Bank*,
   2002 WL 31973738 (D. Or. 2002) .................................................. 14

*U.S. EEOC v. Reeves & Assocs.*,
   2002 WL 1151459 (C.D. Cal. 2002) .......................................... 14, 15

*Welch v. Metro. Life Ins. Co.*,
   480 F.3d 942 (9th Cir. 2007) ...................................................... 13, 14

**STATUTES**

16 U.S.C. §§ 1531 ................................................................................................................. 1

16 U.S.C. § 1540(g)(1)(A) ................................................................................................... 8

16 U.S.C. § 1540(g)(4) ............................................................................................... 2, 8, 9

## INTRODUCTION

This case never should have been brought in the first place. Plaintiff notified Defendants that they should reinitiate consultation on the Willamette River Basin Project under Section 7 of the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 *et seq*. Defendant agencies, appropriately, responded that they had already done so and intended to complete that consultation in the near future. Even so, Plaintiff sued seeking the precise relief that Defendants had promised in their response. Although Defendants made good on their promised schedule for completing consultation, Plaintiff now seeks a windfall in attorneys' fees and costs for filing a complaint that never should have been filed, losing at the motion to dismiss stage, and seeks almost double the amount first incurred for an appeal that merely remanded to this Court for further factual findings. The total amount sought for losing this lawsuit, $215,196.09, shocks the conscience.

This suit in no way furthers the purposes of the ESA. As explained below, and in direct response to the Ninth Circuit's remand, Plaintiff's lawsuit had nothing to do with Defendants reinitiating consultation on the Willamette Project, and did not alter the timing for completion of that consultation. This Court has the discretion to deny Plaintiff attorneys' fees because a recovery is not appropriate under these unique factual and legal circumstances.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendants incorporate the background set forth in earlier briefings, ECF Nos. 25 & 45 and Answering Brief for Federal Appellees (ECF No. 17), No. 17-35668 (9th Cir. Dec. 26, 2017), and summarize the most relevant proceedings:

Plaintiff appealed this Court's order denying their earlier motion for attorneys' fees to the Ninth Circuit, contending that its lawsuit was the catalyst for Defendants' reinitiation of

consultation with the United States Fish and Wildlife Service ("FWS") on bull trout critical habitat, and thus should have been awarded fees under the ESA's citizen-suit provision. 16 U.S.C. § 1540(g)(4).

The Ninth Circuit affirmed this Court's order in part and reversed in part, distinguishing between Defendants' actions on the Federal Columbia River Power System ("FCRPS") and the Willamette River Basin Project ("Willamette Project"). For the FCRPS, the Ninth Circuit found that Defendants presented evidence of various efforts undertaken from 2011 through 2016, including drafts, meetings to discuss drafts, revisions, and timelines, which all suggested that Defendants were well on the way to reinitiating formal consultation and complying with their ESA obligations "without any nudging from Alliance." *All. for the Wild Rockies, Inc. v. U.S. Army Corps of Eng'rs*, 736 Fed.Appx. 160, 161 (9th Cir. 2018). It was on this basis that the Ninth Circuit affirmed this Court's earlier conclusion that there was no "clear, causal relationship," between Alliance's suit and Defendants' actions on the FCRPS biological assessment.

In contrast, with respect to the Willamette Project, the Ninth Circuit found that despite the indication that a "near final draft" was developed and distributed between 2011 and 2012, "no further action appear[ed] to have been taken until after Alliance filed suit in 2016, when the Defendants were apparently 'able to provide the necessary staffing in order to complete the near final SBA and submit to FWS to initiate formal consultation.'" *Id*. The court reasoned that "[t]his does little to dispel the strong inference from the chronology that, after four years of inaction on a 'near final draft,' it was Alliance's suit which prompted the Defendants' action *on this particular project*." *Id*. (emphasis in original). The Ninth Circuit ultimately reversed this Court's previous determination of no clear, causal relationship "[i]n the absence of any indication that

7

the Defendants were actively working to proceed on the Willamette Project environmental assessment absent the suit." *Id*.

Following the Ninth Circuit's ruling, Plaintiff moved for attorneys' fees and expenses incurred on appeal along with a motion to transfer consideration of those fees back to this Court.

## ARGUMENT

Plaintiff seeks attorneys' fees incurred at the district court as well as on appeal to the Ninth Circuit under the ESA on the theory that such an award is appropriate because the Ninth Circuit reversed this Court's decision on a significant issue and "granted the request [that] Alliance sought." Motion for Attorney Fees and Other Expenses (ECF No. 50-1) at 3, No. 17-35668 (9th Cir. Oct. 26, 2018) [hereinafter "9th Cir. Mot., ECF No. 50"]. Plaintiff is wrong. The Ninth Circuit did not grant any requested relief in its August 30, 2018 memorandum opinion. To the contrary, the panel merely remanded the case for this Court to determine whether a "clear, causal relationship" could be established on the Willamette Project. Plaintiff also claims that it qualifies as a "prevailing party" on appeal for purpose of awarding attorneys' fees because it prevailed on a "significant issue." *Id*. at 4. Plaintiff is again mistaken. The threshold question for determining an award of attorneys' fees under the ESA's citizen-suit provision is not whether a plaintiff can achieve a procedural remand but whether a plaintiff can demonstrate some success vindicating the purposes of the Act. Although Plaintiff may disagree, recovery of attorneys' fees is decidedly not one of the purposes of the ESA. Moreover, it remains an open question whether Plaintiff has succeeded in demonstrating that its lawsuit catalyzed Defendants' reinitiation on the Willamette Project. The only "success" that Plaintiff can point to on appeal is the Ninth Circuit's instruction that reinitiation on the Willamette Project be re-evaluated by this Court.  A remand for further factual finding is not a win.

8

I.      **Alliance's Lawsuit Did Not Prompt Defendants to Reinitiate Consultation on the Willamette Project and Therefore Plaintiff Is Not Entitled to Any Attorneys' Fees.**

The Supreme Court has held that an award of attorneys' fees is "appropriate" if the fee applicant obtained at least "some success on the merits." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 682 (1983) (interpreting a similarly worded fee provision in the Clean Air Act). A plaintiff is considered to have some success if its lawsuit "forced defendants to abandon illegal conduct, although without a formal court order." *Id.* at 686 n.8. This "catalyst theory" is evaluated under a two-part test in which the court first determines what the lawsuit sought to accomplish and then whether it was accomplished by means of the suit.

Though plaintiff need only have received some of the benefits it sought in the suit, there must be some sort of clear, *causal relationship* between the litigation brought and the practical outcome realized. *Idaho Watersheds Project v. Jones*, 253 Fed.Appx. 684, 685 (9th Cir. 2007) (citing *Ass'n of Cal. Water Agencies v. Evans*, 386 F.3d 879, 886 (9th Cir. 2004)) (emphasis in original). The second part of this test is a legal inquiry. The court must determine that the benefit achieved was required by law and was not a gratuitous act of the defendant. *Id.* at 686. The catalyst theory, however, requires that *actual* litigation trigger a defendant's decision to act—not simply threatened litigation as with a 60-day notice of intent to sue. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 610 (2001) (underscoring *lawsuit* must be "a substantial rather than an insubstantial cause of the defendant's change in conduct") (emphasis added). The test adopted by the Ninth Circuit in *Evans* confirms as much by

requiring a clear, causal relationship between the *litigation brought* and the practical outcome realized.[1]

Here, Defendants reinitiated consultation with FWS even before receiving the jurisdictionally required 60-day notice of intent to sue. Indeed, the process was well underway before Alliance filed its actual complaint on July 11, 2016. *See* Eppard Decl. at ¶ 4-5, 9. Soon after FWS revised its designation of bull trout critical habitat in 2011, the action agencies informed FWS that, to reinitiate formal consultation, they were preparing biological assessments ("BA") on the effect of ongoing dam operations in critical habitat. Excerpts of Record (ECF No. 10-2) at ER73, No. 17-35668 (9th Cir. Nov. 28, 2017). Greg Smith, former Environmental Resource Specialist at the Corps, circulated a draft BA for the Willamette Project to the action agencies in late 2011 and solicited their comments for incorporation. *Id*. at ER76-77. In December 2011, he again followed up with the agencies, asking them for additional feedback and reminding them that he was about to meet with FWS to discuss the draft. *Id*. at ER76. The next month, after receiving comments from the Bureau of Reclamation, he notified the agencies once more that he would meet with FWS on January 10, 2012. *Id*.

Following Plaintiff's notice of intent to sue in May 2016, the action agencies responded by letter making clear that they were nearing completion of the Willamette Project supplemental BA. As explained to Alliance: the action agencies were "preparing an evaluation of the effects" of the Willamette dams on designated bull trout critical habitat; were "continuing to coordinate" with FWS "through ongoing consultation processes"; and "expected to initiate formal consultation with FWS by submitting a supplemental BA for the Willamette dams "in fall 2016."

---

[1] *See* Fed. R. Civ. Proc. 3: a civil action is commenced by filing a complaint with the court.

*Id.* at ER166. Three months later, in September 2016, consistent with their response to Alliance, the action agencies submitted a supplemental BA for the Willamette Project. Supplemental Excerpts of Record (ECF No. 18) at SER22, No. 17-35668 (Dec. 26, 2017). This Court found this sequence of events persuasive, holding that "Federal Defendants have provided significant evidence of their planning to submit biological assessments within a timeline that was largely consistent with their plans prior to Alliance's suit." ECF No. 50 at 7. The Ninth Circuit was less convinced, holding that "[i]n the absence of any indication that the Defendants were actively working to proceed on the Willamette Project environmental assessment absent the suit, we reverse the [district] court's determination of no clear causal relationship and remand for further proceedings." *Alliance*, 736 Fed.Appx. at 161.

Defendants offer the following declaration in support of their position that they were actively working to proceed on the Willamette Project independent of Plaintiff's suit. Matthew Eppard, Fishery Biologist for the U.S. Army Corps of Engineers, reiterates the prior-submitted declaration of Mr. Rock Peters (ECF No. 47-7) that although a near final draft of the Willamette Project BA was distributed to the Bonneville Power Administration ("Bonneville") and the U.S. Bureau of Reclamation for review between November, 2011 and January 2012, Defendants were unable to submit a finalized BA to FWS in 2012 "due to unavoidable limitations on manpower and a resulting reprioritization of workload as a result of an assessment that the changes to critical habitat in the 2010 designation were minor." Eppard Decl. at ¶ 5. This reprioritization was due, in part, to the fact that there were greater changes in critical habitat to projects on the FCRPS than in the Willamette Basin. *Id.* at ¶ 7.

In 2016, while the response to Plaintiff's notice of intent to sue was being prepared, the Corps and Bonneville discussed using Greg Smith as a resource to help finalize the assessment.

11

*Id.* at ¶ 10. Bonneville informally provided some of Mr. Smith's time towards that effort, as indicated in a June 20, 2016 email from his then-supervisor, Joyce Casey, to counsel and management at Corps and Bonneville. *See* Exhibit 3 to Eppard Decl., Email from Joyce Casey, Chief of Environmental Branch, U.S. Army Corps of Eng'rs to Leanne Holm, U.S. Army Corps of Eng'rs; Kassandra Brown, Bonneville Power Admin.; and Rock Peters, U.S. Army Corps of Eng'rs (June 20, 2016, 16:35). In this email, it was estimated that the Willamette Project supplemental BA would be completed in "30 to 45 days." *Id.* Mr. Smith immediately began working to finalize the draft supplemental BA and coordinated with staff and counsel at both Bonneville and Corps in that effort. Eppard Decl. at ¶ 10. An effort, which included Mr. Smith and Corps staff performing GIS analyses and preparing maps identifying the Project's impacted areas. *Id.*

Defendants continued to coordinate and work on the biological assessments for both the FCRPS and Willamette Project over the next several weeks and in August 2016 another Corps Fishery Biologist was assigned to work with Mr. Smith to finalize and submit the Willamette Project Supplemental BA. The document was submitted to FWS on September 27, 2016 in accordance with the schedule that the Corps outlined in its response to Plaintiff's 60-day notice of intent to sue. *Id.* at ¶ 11. One month later, FWS formally confirmed that the assessment was a complete consultation initiation package. *Id.*

The Ninth Circuit reversed this court's determination of no clear, causal relationship "[i]n the absence of any indication that the Defendants were actively working to proceed on the Willamette Project environmental assessment absent the suit." The timeline established in Mr. Eppard's declaration, however, underscores that completion of the Willamette Project supplemental BA was a work in progress before Plaintiff filed suit. To be sure, the timeline is

protracted, having begun in 2011. But the consultations at issue were complex—consultation that required multiple agencies to balance competing congressional objectives to manage water runoff in an area the size of France. Even if a biological assessment was not submitted until after a complaint was filed, the fact that Defendants were actively dedicating time and resources to the consultation before the start of litigation is enough to overcome any entitlement to fees under a catalyst theory. As the declaration makes clear, the filing of Plaintiff's complaint did not affect this consultation, and did not alter the schedule for completion. *Id.*

The Ninth Circuit reversed this Court's earlier ruling "in the absence of any indication that the Defendants were actively working to proceed on the Willamette Project … absent the suit" and remanded for further factual finding. As Mr. Eppard's declaration demonstrates, there is no clear, *causal relationship* between the filing of the complaint and the completion of this consultation.

## II.    Plaintiff's Pre-Litigation Notice of Intent to Sue Cannot Establish Entitlement to Fees

The ESA states that "any person may commence a civil suit on his own behalf … to enjoin any person, including the United States and any other governmental instrumentality or agency … who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof." 16 U.S.C. § 1540(g)(1)(A). The ESA further provides that, in issuing any final order in any suit brought under the citizen-suit provision, the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." *Id.* § 1540(g)(4). As a partial waiver of sovereign immunity, the ESA's fee-shifting provision "must be strictly construed in favor of the United States." *Ardestani v. INS*, 502 U.S. 129, 137 (1991). "[T]he fee applicant bears the burden

of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhard*, 461 U.S. 424, 437 (1983).

    To recover fees, it is not enough for a plaintiff to prove that the defendant took required action in response to a notice of intent to sue; a plaintiff must prove that it, "by means of the suit" itself, caused the defendant to take the required action. *Evans*, 386 F.3d at 886. This distinction is important. The availability of attorneys' fees to prevailing parties or at a court's discretion, as in the case of the ESA's citizen-suit provision, is predicated on a plaintiff securing relief from litigation brought rather than merely litigation threatened. *Id*. A contrary rule would encourage litigants to file meritless, post-hoc lawsuits to profit from otherwise-settled disputes. *State of N.H. v. Adams*, 159 F.3d 680, 686 (1st Cir. 1998) (finding "[a] party ... must show that the relief ultimately obtained was sought ... *and refused* ... prior to the commencement of a contested hearing") (emphasis added). The distinction is also set forth in the law. The text of the ESA is clear that a court "may award of costs of litigation." 16 U.S.C. § 1540(g)(4). Absent is any mention of costs associated with a notice of *intent* to litigate. Congress certainly could have expanded the statutory language to include compensation related to the notice of intent, but chose not to do so.

    Case law, too, confirms this analysis. The ESA's 60-day notice of intent to sue provision is designed to give federal agencies the opportunity to "take responsibility for enforcing environmental regulations, thus obviating the need for citizen-suits." *Klamath-Siskiyou Wildlands Ctr. v. MacWhorter*, 797 F.3d 645, 650 (9th Cir. 2015) (quoting *Hallstrom v. Tillamook Cty.*, 110 S. Ct. 304, 314 (1989)). Awarding fees for a successful notice of intent to sue, rather than a successful complaint, would contravene the ESA's notice requirement itself, which Congress implemented to curb avoidable litigation. *See Marbled Murrelet v. Babbit*, 83

14

F.3d 1068, 1072 (9th Cir. 1996). This "mechanism for compromise and cooperation … would be jeopardized if [courts] were to … award[] attorneys' fees for settlements achieved at that stage." *J.C. v. Reg'l Sch. Dist. 10, Bd. Of Educ.*, 278 F.3d 119, 124-25 (2nd Cir. 2002). Any attribution of Defendants' conduct to Plaintiff's pre-litigation notice, rather than to Plaintiff's complaint, should therefore preclude recovery under the catalyst theory.

### III.   Plaintiff Is Not Entitled to Appellate Fees

As set forth above, Plaintiff is not entitled to any fee award as it was not the catalyst for the agencies' action. Recovery under the catalyst theory is available to parties who obtain some relief prior to adjudication on the merits. For those plaintiffs who can demonstrate that their cause of action spurred defendants to abandon illegal conduct and come into compliance with the law, courts have supported their entitlement to recover fees and expenses incurred pursuing that enforcement. It stands to reason, however, that any eligible recovery should be limited to those costs incurred up to the point of the catalyzing event and cut off thereafter. Indeed, as this Court noted, once the "catalyzing" event occurs, there is no longer a case or controversy and subject matter jurisdiction is lacking. *See* ECF No. 35 at 8-9. In other words, Plaintiff has no right to collect fees and expenses incurred *after* the reinitiation of consultation and the issuance of a biological opinion here. Reinitiation is precisely the relief that Plaintiff's original complaint requested the Court grant in 2016. *See* ECF No. 1 at 11. Any costs incurred by Plaintiff after Defendants reinitiated consultation could not, and did not, contribute to securing this relief. Nonetheless, Plaintiff seeks a windfall and misunderstands the catalyst theory of recovery when it applies for $130,597.39 in compensation tied to arguments made after the catalyzing event and distinct from the underlying litigation. *All. For Wild Rockies v. United States Dep't of Agric.*, 2016 WL 4766234, at *7 (D. Mont. 2016) ("[v]iewing this appeal by what it actually,

substantively accomplished for a threatened species under the ESA, the Court finds it is not appropriate to award [plaintiff's] attorney fees on appeal.").

Courts are endowed with a critical sense of discretion when it comes to awarding attorneys' fees under ESA's citizen-suit provision. The statutory language permitting such an award "[w]henever the court determines … appropriate" underscores this call to judgment. In a case which was mooted and dismissed before briefing on the merits and where Plaintiff failed to succeed under a catalyst theory on a majority of its claims, assigning a windfall award at the appellate level here would frustrate the "whenever appropriate" standard that courts are expected to navigate. Doing so sets a precedent that would discourage defendants' incentives to raise legitimate objections to future fee motions and encourages plaintiffs to incur additional fees. The catalyst theory was designed to reward those plaintiffs who can demonstrate some success on the merits. It was never intended to become a vehicle to collect "fees on fees." A windfall, by definition, is not "appropriate." In the interest of fairness, this Court should reject Plaintiff's attempt at a windfall and deny their motion for fees and expenses incurred on appeal.

## IV.    In addition to Being Wholly Improper, Plaintiff's Requested Compensation is Excessive

Setting aside Plaintiff's lack of entitlement to any fees paid from the United States in this lawsuit, for the sake of argument, it is certainly not entitled to its claimed $215,196.09 for a case that it lost at the motion to dismiss stage.[2] Plaintiff achieved—at best—only a procedural remand from its appeal, not any substantive relief at the Ninth Circuit. Moreover, even in setting forth its demand, Plaintiff's fee request is excessive and warrants reduction.

---

[2] This represents the total amount sought at both the district court ($84,598.70) and on appeal to the Ninth Circuit ($130,597.39).

The ESA permits awards of "reasonable" attorneys' fees—a figure determined by multiplying a reasonable number of hours by a reasonable billing rate. *Hensley*, 461 U.S. at 433. Plaintiff's request fails on both of these so-called "lodestar" calculations. The burden is on Plaintiff to document reasonable hours and maintain billing records to support its fee request. *Id.* at 437. Counsel for the fee applicant "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 434. The hours billed by Plaintiff's counsel here include numerous entries that qualify as excessive, redundant, or otherwise unnecessary and should be excluded on that basis.

### A.  Plaintiff's Time Billed is Excessive, Redundant, and Inappropriate

When seeking fees from the United States, plaintiffs must exercise billing judgment and submit hours that are reasonable for tasks undertaken: "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary…" *Id.* Here, Plaintiff seeks compensation for an unreasonable amount of time spent preparing its appeal; failed to exercise billing judgment by eliminating duplicative or redundant hours; and seeks to recover various fees and expenses that are improperly billed to one's adversary.

### 1.    Excessive Hours

Plaintiff asserts that counsel spent a combined 381.8 hours preparing for appeal in this case. *See* 9th Cir. Mot., ECF No. 50-1 at 8. Plaintiff's counsel consists of two primary attorneys (Ms. Kristine Akland and Mr. Timothy Bechtold) together with one other attorney (Ms. Rebecca Smith) who appears to have assisted Ms. Akland and Mr. Bechtold at various stages of this litigation. Plaintiff's original motion for fees filed with this Court consisted of an 11-page memorandum along with nearly 80 additional pages of supporting exhibits and declarations. *See* ECF No. 41. At the time, they sought $84,598.70 in fees and expenses for 296.7 hours of work.

17

ECF No. 49 at 5-6. In comparison, Plaintiff's motion for fees filed with the Ninth Circuit consisted of a 13-page memorandum accompanied by nearly 65 additional pages of supporting exhibits and declarations for which they now seek $130,597.39 over 381.8 hours. *See* 9th Cir. Mot., ECF No. 50. Plaintiff's motion on appeal, however, largely reiterates most of the factual and legal conclusions already researched in their original motion for fees. *Compare* ECF No. 41 *with* 9th Cir. Mot., ECF No. 50. Indeed, entire paragraphs appear simply to have been copied and pasted from their district court filing into their Ninth Circuit filing. It is unclear how counsel for Plaintiff could incur more than 100 additional hours on appeal than they did researching and briefing the original motion. Plaintiff should not be compensated for writing the same memorandum twice. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 950 (9th Cir. 2007) (finding "[a] reduction in hours is appropriate if the court reasonably concludes that preparation of a motion 'demanded little of counsel's time,'" and upholding district court's determination that much of the language in [plaintiff's] motion for fees was recycled from submissions to other courts) (citing *Hyland v. Indicator Lites, Inc.*, 160 F. Supp. 2d 981, 986 (N.D. Ill. 2001) (holding that reduction in hours billed by prevailing party's attorney for drafting complaint was warranted where complaint contained standard formulations and was drafted using "cutting and pasting")).[3]

## 2. Duplicative and Redundant Hours

Plaintiff asserts that "[i]n compiling the totals, [counsel for Plaintiff] reviewed their contemporaneous time entries to ensure that no hours were excessive, redundant, or otherwise unnecessary." 9th Cir. Mot., ECF No. 50-1 at 8. Despite this assurance, the hours submitted by

---

[3] *See also Chalmers v. City of L.A.*, 796 F.2d 1205, 1214 (9th Cir. 1986) (reducing 172.95 hours sought on appeal to 90 hours given "counsel's familiarity with the issues," his experience in the profession, as well as the "nature of the issues on appeal" where issues presented "were not complex," and "[a]ll of the issues involved matters intimately associated with the trial proceedings," which counsel on appeal also worked on).

Plaintiff's counsel include many redundant entries that should be excluded.[4] "The policy of this court is to reduce the hours where more than one lawyer performed the same task." *McKenzie Flyfishers v. McIntonsh*, 158 F. Supp. 3d 1085, 1095 (D. Or. 2016) (quoting *Native Fish Soc'y v. NMFS*, 2014 WL 7331039, at *3 (D. Or. 2014)).

In the Ninth Circuit, time spent conferring among co-counsel is often considered redundant. *See Welch*, 480 F.3d at 949 (finding intra-office conferences between primary counsel and colleague were unnecessary, especially considering primary counsel's substantial experience with the area of the law); *see also Taylor v. Albina Cmty. Bank*, 2002 WL 31973738, at *4 (D. Or. 2002) (holding that "[d]uplication of time must be excluded from a fee award" and finding "[a]n example of duplicated effort [is] … [w]hen attorneys hold a telephone or personal conference with another attorney"; "[r]eading an email is simply another method of holding a conference." "Good 'billing judgment' mandates that only one participant in the conference should bill that conference to the client"). "A party is certainly free to hire and pay as many lawyers as it wishes, but cannot expect to shift the cost of any redundancies to its opponent." *Asia Pac. Agric. & Forestry Co. v. Sester Farms, Inc.*, 2013 WL 6157263, at *4 (D. Or. 2013). Ms. Akland holds herself out to the Court as a "specialist with distinctive skill in federal environmental law." 9th Cir. Mot., ECF No. 50-6 at 3. Yet, while it is difficult to discern exactly how much time Ms. Akland spent conferring with co-counsel due to poorly specified billing entries, her submitted invoice suggests it could be as high as 22 hours.

Even where time spent conferring between attorneys is deemed appropriate, that time can be billed only once. *See, e.g., U.S. EEOC v. Reeves & Assocs.*, 2002 WL 1151459, at *14 (C.D.

---

[4] Defendants identify no less than 44.7 hours on appeal that should be excluded on this basis.

Cal. 2002), *vacated on other grounds*, 2003 WL 21480317 (9th Cir. 2003) (holding that time spent conferring between attorneys that is billed by both is duplicative and is recoverable only once); *Taylor*, WL 31973738 at *4 (noting "[w]hen attorneys hold a telephone or personal conference with another attorney or paralegal, good 'billing judgment' mandates that only one participant in the conference should bill that conference to the client."); *S. Yuba River Citizens League & Friends of River v. Nat'l Marine Fisheries Serv.*, 2012 WL 1038131, at *5 (E.D. Cal. 2012) (reducing fees by 20 percent for time spent where "three or more attorneys each billed time to discuss things like 'strategy,' or each other's legal research").

Ms. Akland's fee submission includes numerous entries that are duplicative or redundant of entries submitted by Mr. Bechtold and Ms. Smith. For instance, of the 8.1 total hours that Ms. Smith seeks to recover, 7.3 are also included in Ms. Akland's submitted bill. *Compare* 9th Cir. Mot., ECF No. 50-5 at 6 *with* 9th Cir. Mot., ECF No. 50-6 at 13-14. This time was spent discussing the issues and structure of appeal along with mooting the oral argument together. Ms. Akland also seeks 15.1 hours for various entries also included in Mr. Bechtold's bill including time spent conferencing together and preparing for oral argument. *Compare* 9th Cir. Mot., ECF No. 50-3 at 7 *with* 9th Cir. Mot., ECF No. 50-6 at 10-15.

In determining the number of hours reasonably expended by Plaintiff, this Court should also consider the degree to which Plaintiff's counsel may have overstaffed the case, thus engaging in duplicative work. Such duplicative work is considered "redundant" and non-compensable. *See Hensley*, 461 U.S. at 434 (citation omitted). *See, e.g., Reeves & Assocs.*, WL 1151459, at *14; *Farris v. Cox*, 508 F. Supp. 222, 226 (N.D. Cal. 1981) (reducing hours where multiple attorneys attended depositions and hearings). Courts express heightened skepticism when more than one senior attorney attends depositions or hearings when only one is necessary

or actively involved. *See, e.g.*, *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 953 (1st Cir. 1984) (finding "we see no justification for the presence of two top echelon attorneys at each proceeding" particularly where one attorney "was merely in attendance [and did not] actually address[] the court"). Here, Ms. Akland and Mr. Bechtold both attended oral arguments at the Ninth Circuit and both seek compensation for the considerable travel expense to and from Alaska. Ms. Akland, however, was the only attorney to participate in oral argument.[5] The extent of Mr. Bechtold's involvement there appears limited to mooting the case with Ms. Akland in the 48 hours leading up to argument. Mr. Bechtold did not need to accompany Ms. Akland—"a specialist with distinctive skill in federal environmental law"—over 2,500 miles to Anchorage, Alaska and back to moot an argument that he could have assisted with prior to the argument or, at the very least, over the phone. The public fisc should not be responsible for funding needless trips to Alaska. As a result, Mr. Bechtold's time and expense incurred while doing so should properly be excluded from any fee award granted to Plaintiff here.

### 3.    Inappropriate Hours and Expenses

Counsel for Plaintiff seek to recover hours and expenses not properly billed to their client nor the United States government as an adversary in this case. Clerical tasks that do not require the skills of an attorney should not be billed at the rate of either a paralegal or a lawyer, no matter who performs the tasks. *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989). "It is appropriate to distinguish between legal work, in the strict sense … and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just

---

[5] *See* https://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000014134.

because a lawyer does it." *Id.* (quoting *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974). Indeed, clerical tasks are included in a firm's overhead, and overhead in turn is included in the hourly attorney rate, so billing for clerical tasks would require taxpayers to pay twice for the same services. *See Frevach Land Co. v. Multnomah Cty.*, 2001 WL 34039133, at *12 (D. Or. 2001) (holding "[c]osts associated with clerical tasks are typically considered overhead expenses reflected in the hourly billing rate, and are not properly reimbursable in a … fee award."). Here, Ms. Akland's submitted invoice includes 6.1 hours detailing ECF filings, sending briefs to the printer and to USPS, and simple email correspondence such as confirming oral argument availability with the Ninth Circuit—none of which warrants recovery. *See* 9th Cir. Mot., ECF No. 50-6 at 11-16.

Plaintiff also seeks various expenses that should be excluded from any fee award.[6] For instance, in its memorandum opinion, the Ninth Circuit instructed that "[e]ach party shall bear its own costs on appeal." *Alliance*, 736 Fed.Appx. at 161. Despite the court's instruction, however, Plaintiff's counsel submitted $2,607.89 for reimbursement including $505 in filing fees and $34.50 in postage. Neither expense is compensable given the Ninth Circuit's instruction. Plaintiff also seeks compensation for two meals purchased in Alaska "for Tim, Rebecca, and Kristine." *See* 9th Cir. Mot., ECF No. 50-6 at 17. It is unclear why Rebecca Smith is included at all as her own submitted bill does not seek compensation for travel to and from Alaska for oral argument. Plaintiff's attempt to recover expenses for Ms. Smith casts doubt on the entirety of Plaintiff's billing practices, is blatantly inappropriate, and at minimum should be excluded in any fee award.

---

[6] Defendants identify no less than $1,119.33 in inappropriate expenses.

### B.  Plaintiff's Requested Rates Are Excessive

As discussed in Defendants' earlier response to Plaintiff's motion for fees and expenses (ECF No. 45), Plaintiff is not entitled to its requested hourly rates. Case law and the Local Rules of this Court tether a reasonable hourly rate to the Oregon State Bar Economic Survey. Ms. Akland and Mr. Bechtold, however, both seek rates that exceed the average compensation for similarly situated attorneys practicing in this district. At $250 per hour in 2017, Ms. Akland's requested rate tracks the 75th percentile of attorneys practicing with 0-3 years' experience but is certainly higher than the average $236 per hour. *See* DEBI ELLIOTT ET AL., PORTLAND STATE UNIVERSITY SURVEY RESEARCH LAB, OREGON STATE BAR 2017 ECONOMIC SURVEY: REPORT OF FINDINGS at 38.[7] Meanwhile, Ms. Akland's requested rate of $320 per hour in 2018 exceeds the 75th percentile for Portland attorneys with 4-6 years' experience and even approaches the 95th percentile. *Id*. Indeed, her rate is considerably higher than the average $249 per hour that attorneys in the area reported. *Id*. Similarly, Mr. Bechtold requests hourly rates of $435 for 2017 and $450 for 2018, both of which exceed the 75th percentile for similarly situated attorneys practicing in Portland and which represent a significant departure from the average reported $334 per hour. *Id*. at 39. Although counsel for Plaintiff include a declaration with their motion for fees attesting to the reasonableness of their respective rates, the Ninth Circuit and divisions of this Court have explained that self-serving declarations of the type supplied here cannot justify higher-than-average rates. *See Sam K. ex rel. Diane C. v. Haw. Dep't. of Educ.*, 788 F.3d 1033, 1041 (9th Cir. 2015) (finding "[t]he District Court's … inquiry is aided little by an affidavit which just offers one attorney's conclusory and general opinion on what the relevant

---

[7] *Available at* https://www.osbar.org/_docs/resources/Econsurveys/17EconomicSurvey.pdf.

market rate is. Nor is it helpful if the affiant simply states that he is familiar with the attorney and the litigation and that he thinks the fee is reasonable.") (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319 (D.C. Cir. 1982)).

Losing at the motion to dismiss stage does not warrant enhanced rates. Hourly rates for Ms. Akland and Mr. Bechtold should reflect no more than the average for Portland attorneys as set forth in the Oregon State Bar Economic Survey. Should the Court disagree, however, then at a minimum, Plaintiff should not be entitled to higher-than-average rates for email correspondence, travel, and time spent filing—none of which requires any specialized expertise.

## CONCLUSION

Plaintiff is not entitled to recover any fees from Defendants under the ESA citizen-suit provision because its complaint did not serve as the catalyst for Defendants' reinitiation of consultation on bull trout critical habitat for either the Federal Columbia River Power System dams or the Willamette River Basin Project dams. Even if the Court does find that Plaintiff acted as a catalyst on the Willamette Project, Plaintiff is still not entitled to fees on appeal for work unrelated to the merits of the case. For these reasons, Plaintiff's Motion for Attorney Fees and Other Expenses should be denied. Should the Court disagree and find that Plaintiff is entitled to some fees, however, the requested award should be substantially reduced and the Court should grant no more than $21,996 in fees and costs.[8]

Respectfully submitted this 7th day of December, 2018.

JEAN E. WILLIAMS
Deputy Assistant Attorney General

---

[8] The percentage of Plaintiff's district court fees derived by dividing the number of litigated dams in the Willamette River Basin, which affect bull trout critical habitat (5), by the total number of dams listed in Plaintiff's complaint falling under the FCRPS or the Willamette River Basin (19).

United States Department of Justice
Environment & Natural Resources Division

*/s/ Coby Howell*
COBY HOWELL
Senior Trial Attorney, U.S. Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
(503) 727-1023 (tel)
(202) 305-0275 (fax)
coby.howell@usdoj.gov

*Attorneys for Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the word-count limitation established in this Court's December 5, 2018 minute order granting Defendants' motion to file excess pages. (ECF No. 61). It contains 5,984 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and certificates of counsel.

*/s/ Coby Howell*
COBY HOWELL
Senior Trial Attorney, U.S. Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
(503) 727-1023 (tel)
(202) 305-0275 (fax)
coby.howell@usdoj.gov

*Attorney for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 7, 2018, I electronically filed the foregoing documents with the Clerk of the Court for the District of Oregon via the CM/ECF system, which will send notification of such to the attorneys of record.

*/s/ Coby Howell*
COBY HOWELL
Senior Trial Attorney, U.S. Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
(503) 727-1023 (tel)
(202) 305-0275 (fax)
coby.howell@usdoj.gov

*Attorney for Defendants*