IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ALLIANCE FOR THE WILD ROCKIES, INC.,         No. 3:16-CV-1407-HZ

         Plaintiff,

    v.

U.S. ARMY CORPS OF ENGINEERS, U.S.         OPINION & ORDER
BUREAU OF RECLAMATION, and
BONNEVILLE POWER ADMINISTRATION,

         Defendants.

Kristine M. Akland
Akland Law Firm PLLC
P.O. Box 7274
Missoula, MT 59807

Timothy M. Bechtold
Bechtold Law Firm
PO Box 7051
Missoula, MT 59807

Marianne G. Dugan
Attorney at Law
259 E. 5th Avenue, Suite 200-D
Eugene, OR 97401

Attorneys for Plaintiff

Coby Healy Howell
U.S. Department of Justice
Environment and Natural Resources Division
c/o U.S. Attorney's Office
1000 SW Third Avenue
Suite 600
Portland, OR 97204

Attorney for Defendants

HERNÁNDEZ, District Judge:

Plaintiff Alliance for the Wild Rockies seeks attorneys' fees and costs amounting to $230,676.79 from the United States Army Corps of Engineers, Bureau of Reclamation, and Bonneville Power Administration. The Court grants Plaintiff's Motions for Attorneys' Fees [41] [57-1] in the amount of $201,093.66.

## BACKGROUND

On October 18, 2010, the United States Fish and Wildlife Service ("FWS") designated several bull trout habitats as "critical." 75 Fed. Reg. 63898. As a result, Defendants were required under the Endangered Species Act (ESA) to initiate consultation on critical bull habitat in the vicinity of their dams by submitting biological assessments to the FWS. 16 U.S.C. § 1536.

On May 6, 2016, Plaintiff sent Defendants a notice of intent to sue, alleging that Defendants had not initiated consultation as required. Mot. Dismiss Ex. 3, at 3–4. Defendants responded by letter, indicating, in relevant part to this motion, that a biological assessment for the Willamette River Basin Project ("Willamette Project") was scheduled for completion in the fall of 2016. Mot. Dismiss Ex. 4, at 2. On July 11, 2016, Plaintiff filed a complaint. ECF 1. On September 27, 2016, Defendants submitted the Willamette Project biological assessment to the FWS. Mem. in Opp'n to Pl.'s Mot. for Atty's Fees (hereinafter "Def. Resp.") 12, ECF 62. On

February 22, 2017, this Court granted Defendants' motion to dismiss, finding that Defendants had initiated consultation by submitting biological assessments as required, thereby rendering the case moot. Op. & Order 8, ECF 35.

On April 17, 2017, Plaintiff filed a motion for attorneys' fees on the theory that its lawsuit prompted Defendants to initiate—or reinitiate—consultation on the identified dams. Mot. Att'y Fees 6, ECF 41. The Court denied that motion, and Plaintiff appealed. The Ninth Circuit affirmed in part and reversed in part. *Alliance for the Wild Rockies, Inc. v. United States Army Corps of Engineers*, 736 F. App'x 160, 161 (9th Cir. 2018). The court distinguished between the Defendants' actions on two different projects: the Federal Columbia River Power System ("FCRPS") and the Willamette Project. *Id.* The court affirmed this Court's conclusion that there was no "clear, causal relationship" between the suit and Defendants' actions on the FCRPS environmental assessment, but reversed with regard to the Willamette Project. *Id.*

Plaintiff then filed a motion for attorneys' fees on appeal with the Ninth Circuit, as well as a motion to transfer consideration of that motion to the District Court. ECF 57. The Court of Appeals granted the motion to transfer consideration and remanded the case to this Court for further proceedings. *Id.* On November 13, 2018, this Court ordered Defendants to respond to both motions for district and appellate attorneys' fees. ECF 59.

## STANDARDS

Under the ESA's citizen-suit provision, a court "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." 16 U.S.C. § 1540(g)(4). Whether it is "appropriate" for a plaintiff to receive an award absent a final judgment on the merits is determined in the Ninth Circuit by a two-part catalyst test. *Ass'n of Cal. Water Agencies v. Evans*, 386 F.3d 879, 885–86 (9th Cir.

2004). The first part of the test requires that the plaintiff show a "clear, *causal relationship* between the litigation brought and the practical outcome realized." *Greater L.A. Council on Deafness v. Cmty. Television*, 813 F.2d 217, 220 (9th Cir. 1987) (quoting *Am. Const. Party v. Munro*, 650 F.2d 184, 188 (9th Cir. 1981)). Courts consider the order of events in determining whether the plaintiff's suit was a material factor in the defendant's conformity to law. *Wilderness Soc. v. Babbitt*, 5 F.3d 383, 386 (9th Cir. 1993). The second part of the test requires "that the benefit achieved . . . [be] required by law." *Greater L.A. Council*, 813 F.2d at 220.

Once the court has determined that an award is appropriate, the court must calculate what attorney fees are reasonable. The calculation of a reasonable fee award usually involves two steps. First, the court must calculate the "lodestar figure" by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked. *See, e.g.*, *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1993). In determining the lodestar figure, the court may consider the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). These factors include the novelty or difficulty of the case, the preclusion of other employment, time limitations, the amount at stake, the results obtained, and the undesirability of the case. *Id.*

The court must review the petition for reasonableness, even if no objection has been raised to the number of hours billed or the hourly rate used. *Gates*, 987 F.2d at 1401. The district court possesses "considerable discretion" in determining the reasonableness of a fee award. *Webb v. Ada County*, 195 F.3d 524, 526 (9th Cir. 1999). While there is a strong presumption that

the lodestar figure represents a reasonable fee, *see, e.g.*, *Miller v. Los Angeles County Bd. of Educ.*, 827 F.2d 617, 621 (9th Cir. 1987), the court may adjust the lodestar upward in "rare" and "exceptional" cases. *See Pennsylvania v. Citizens' Council for Clean Air Delaware Valley*, 478 U.S. 546, 565 (1986).

## DISCUSSION

In a Memorandum Disposition issued August 30, 2018, the Ninth Circuit affirmed in part and reversed in part this Court's denial of attorneys' fees. *Alliance for the Wild Rockies, Inc.*, 736 F. App'x at 161. Specifically, it concluded that while there was no "clear causal relationship" between Plaintiff's suit and the FRCPS environmental assessment, Defendants' arguments did "little to dispel the strong inference from the chronology that . . . it was Alliance's suit which prompted the Defendants' action" on the Willamette Project. *Id.* at 161. The court went on to concluded that, "[i]n the absence of any indication that Defendants were actively working to proceed on the Willamette Project environmental assessment absent the suit, we reverse the court's determination of no clear causal relationship and remand for further proceedings." *Id.*

The parties now dispute whether the Ninth Circuit's remand for "further proceedings" contemplates only the calculation of attorneys' fees or an opportunity for Defendants to provide the Court with new evidence to show they were actively working to proceed on the Willamette Project environmental assessment absent suit. The Court agrees with Plaintiff and interprets the Ninth Circuit's order as directing the calculation of attorneys' fees.

Even if the Ninth Circuit intended for this Court to conduct further proceedings on the merits of the causal relationship, the Court finds that Defendants have again failed to "dispel the strong inference from the chronology that, after four years of inaction on a 'near final draft,' it was Alliance's suit which prompted the Defendants' action on the Willamette Project." *See*

*Alliance for the Wild Rockies, Inc.*, 736 F. App'x at 161. As noted by the Ninth Circuit, "a 'near final draft' [of the biological assessment] was developed and distributed between 2011 and 2012, but no further action appears to have been taken until after Alliance filed suit in 2016, when the Defendants were apparently 'able to provide the necessary staffing in order to complete the near final SBA and submit to FWS to initiate formal consultation.'" *Id.*

Now, Defendants simply reiterate the same timeline of events reviewed by the Ninth Circuit: agencies worked on an assessment in 2011 and 2012, and they responded to Plaintiff's 60-day notice in 2016 by explaining that they expected "to initiate formal consultation by submitting a supplemental [biological assessment] for the Willamette dams 'in fall 2016.'" Def. Resp. 10. On July 11, 2016, Plaintiff filed a complaint. On September 27, 2016, agencies submitted a supplemental biological assessment for the Willamette Project. In fact, Defendants appear to offer only two "new" pieces of evidence—a more detailed explanation of the timeline via declaration (which includes the conclusory statement that "work was well underway prior to the Plaintiff's complaint being filed") and an email from June 20, 2016. This email states only:

> Greg Smith has generously agreed to bring this BA across the finish line for the Corps. I spoke with Greg today and he is going to come over and get some files he needs to do the work. First step is for him to give us a schedule, then he believes he can complete the BA in 30 to 45 days. If I ask for the schedule by the end of this week, that should be enough time for our reply to the court, yes?

Decl. Matthew Bradford Eppard, ECF 63, Ex. 3.

Defendants argue this evidence shows they began working on the project *after* they received Plaintiff's 60-day notice of intent but *before* Plaintiff filed the complaint. Therefore, Defendants' actions were not motivated by the litigation, but, at most, by the 60-day notice of intent to sue. Defendants argue that, as a matter of law, actual litigation—"not simply threatened litigation as with a 60-day notice of intent to sue"—must trigger a defendant's decision to act.

Def. Resp. 9. Defendants do not cite any cases that discuss, let alone support, this very narrow—

and necessarily fact dependent—contention. Moreover, this same argument was raised on appeal

without success. *See* 9th Cir. Def. Answer 11, ECF 17.

Regardless, a single new email does not, in fact, "dispel the strong inference from the

chronology that . . . that it was Alliance's suit which prompted the Defendants' action" on the

Willamette Project. In other words, even accepting Defendants' arguments, one email sent after

receipt of the 60-day notice but before a lawsuit was filed does not overcome the inference that it

was the suit itself that prompted Defendants' actions on the Willamette Project. Defendants have

identified no evidence that anyone *actually* began working on the biological assessment until

after the complaint was filed. Indeed, while the email estimates the biological assessment would

be complete in 30 to 45 days, it was not submitted to FWS until September 27, 2016—100 days

after the email was sent, and more than two months after the complaint was filed. As noted by

Defendants, "[t]he purpose of [the 60-day] notice is to give the federal government and any

alleged violators an opportunity to comply, and thus render a citizen suit unnecessary." *Marbled*

*Murrelet v. Babbit*, 83 F.3d 1068, 1072 (9th Cir. 1996) (citing *Gwaltney of Smithfield, Ltd. v.*

*Chesapeake Bay Found*., Inc., 484 U.S. 49, 60 (1987)). Here, Defendants had the opportunity to

comply, but did not do so until more than two months after Plaintiff filed suit.

Thus, the Court turns to Plaintiff's two pending motions for attorneys' fees—one for

work in the district court and one for work on appeal. Plaintiff requests fees for the work of four

attorneys, one paralegal, and one expert witness. The Court addresses each of Defendants'

objections in turn.

**1. Fees and Costs on Appeal**

Defendants first argue that Plaintiff is not entitled to attorneys' fees on appeal. They

argue "Plaintiff has no right to collect fees and expenses incurred *after* the reinitiation of

consultation and the issuance of a biological opinion" because after "the 'catalyzing' event

occurs, there is no longer a case or controversy and subject matter jurisdiction is lacking." Def.

Resp. 15. Defendants cite no case law in support of this position. And in fact, the Ninth Circuit

has held that "mootness alone does not preclude an award of attorneys fees." *Ctr. for Biological*

*Diversity v. Marina Point Development Co.*, 566 F.3d 794, 805 (9th Cir. 2008). The Court also

notes that it is well established that "time spent by counsel in establishing the right to a fee award

is compensable." *Davis v. City of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992) (vacated

in part on other grounds).

Plaintiff is not, however, entitled to costs on appeal. In its memorandum disposition, the

Ninth Circuit instructed that "[e]ach party shall bear its own costs on appeal." *See Alliance for*

*the Wild Rockies, Inc.*, 736 F. App'x at 161. Plaintiff argues that this instruction applies only to

taxable costs, and that non-taxable costs are still recoverable under the ESA. Absent further

direction or citation from the Ninth Circuit, the Court declines to adopt Plaintiff's interpretation

of the order and applies the plain meaning instead; Plaintiff is not entitled to costs on appeal.

Plaintiff's request is therefore reduced by $2,607.89.[1]

## 2. Expert Witness Fees

Plaintiff requests $6,457.50 in expert witness fees for the services of David Becker.

Under the ESA, a court may award reasonable "expert witness fees." 16 U.S.C. § 1540(g)(4).

Defendants argue that "expert witness fees" encompass only testimonial expert witness fees.

Thus, Plaintiff may only recover fees directly related to the preparation of Mr. Becker's

---

[1] This includes a filing fee, travel costs for Ms. Akland and Mr. Bechtold, and postage. *See* Decl. Akland at 3, ECF 67.

declaration (i.e Mr. Becker may not bill for time spent consulting with Plaintiff's attorneys). Defs. Suppl. Br. on Costs 6, ECF 72. The Court does not agree with this narrow reading. While the Supreme Court recently stated that a statute will not be construed as authorizing expert witness fees "absent an explicit statutory instruction to that effect," *Rimini Street, Inc. v. Oracle USA, Inc*, No. 17-1625, 2019 WL 1005825, *6 (2019), here the ESA explicitly allows for the recovery of expert witness fees. This statutory instruction allows Plaintiff to recover the full fee for Mr. Becker, an expert witness.

### 3. Reasonableness of Hours Expended

It is the fee claimant's burden to demonstrate that the number of hours spent on the case was "reasonably necessary" to the litigation and that counsel made "a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see also Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989) ("Plaintiffs bear the burden of showing the time spent and that it was reasonably necessary to the successful prosecution of their [ ] claims.").

#### a. Duplicative Hours

Defendants argue that counsel's duplicative hours should be excluded from the lodestar calculation. Under certain circumstances, duplicative hours may be deducted from a fee award. While "[a] party is certainly free to hire and pay as may lawyers as it wishes, [it] cannot expect to shift the cost of any redundancies to its opponent." *Nat'l Warranty Ins. Co. v. Greenfield*, No. CV-97-1654-ST, 2001 WL 34045734, at *5 (D. Or. Feb. 8, 2001). For example, "[w]hen attorneys hold a telephone or personal conference, good 'billing judgment' mandates that only one attorney should bill that conference to the client, not both attorneys. The same good 'billing

judgment' requires attorneys not to bill for more than two attorneys to review pleadings or to

attend oral argument." *Id.* In determining whether hours were duplicative, courts should consider

the complexity of the case or the extent to which the attorneys handled distinct aspects of the

task billed. *See United States v. Montagne Development, Inc.*, 3:11-cv-01191-PK, 2014 WL

2334209, at *5 (D. Or. Mar. 10, 2014). "To correct for this duplication by two attorneys, the

higher billing rate of the two attorneys should be allowed." *Miranda-Olivares v. Clackamas Cty.*,

No. 3:12-CV-02317-ST, 2015 WL 5093752, at *8 (D. Or. Aug. 28, 2015); *see also Montagne*

*Development, Inc.*, 2014 WL 2334209, at *5 (reducing duplicative hours for "multiple attorneys

billing for the same mediation, the same conference with opposing counsel, or the same intra-

office conference").

On this basis, the Court has reduced hours that clearly overlap between multiple attorneys

and are billed on the same day. The following hours are subtracted from Plaintiff's requested

award:[2]

| Attorney: Akland | | | |
|---|---|---|---|
| Date | Description | Time | Rate |
| 11/10/17 | Conference with Tim re: biological assessment | 0.3 | 250 |
| 1/11/18 | Conference with Tim re: requesting additional time to reply; file streamlined request for extension of time | 0.2 | 320 |
| 4/27/18 | Email from 9th cir re: anchorage oral arg; conference with Tim re: same (.2); call with client re: same (.2) | 0.4 | 320 |
| Total | | 0.9 | $262 |

Defendants also challenge Mr. Bechtold's travel to and appearance at the Ninth Circuit

oral argument as duplicative.[3] "[T]he participation of more than one attorney does not

---

[2] Defendants claim to "identify no less than 44.7 hours on appeal that should be excluded" as duplicative. Def. Resp. 19 n.4. They do not, however, identify those hours for the Court.

necessarily constitute an unnecessary duplication of effort." *Mardirossian v. Guardian Life Ins. Co. of America*, 457 F.Supp.2d 1038 (C.D. Cal. 2006) (quoting *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n. 9 (9th Cir.1989); *McGrath v. County of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995)). "However, duplication must typically be warranted by the complexity of the matter or by each attorney's distinct contributions to the case." *Id.* Here, Plaintiff offers no response to Defendants' challenge. Plaintiff has not explained the complexity of the matter or identified Mr. Bechtold's distinct contributions. Indeed, it appears to the Court that oral argument was limited to the narrow and not particularly complex question of attorneys' fees in a mooted case. Defendant has also argued, and Plaintiff failed to rebut, that Ms. Akland argued the matter without assistance. *See Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004) ("[I]f lawyers merely watch so that they can learn and use their knowledge in subsequent cases, their time should not be billed. But if, for example, they are there because their assistance is or may be needed by the lawyer arguing the case, as when a judge asks 'where is that in the record,' and one lawyer must frantically flip through pages and find the reference to hand to the lawyer arguing, then the assistance is most definitely necessary. Also, for example, a lawyer who has worked on the case and will be working on it subsequently may need to observe argument to judge how to proceed later."). Plaintiff has therefore failed to meet its burden to demonstrate that Mr. Bechtold's time spent watching oral argument and travel costs were "reasonably necessary" to the litigation and that counsel made "a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]" *Hensley*, 461 U.S. at 434. The Court therefore reduces Mr. Bechtold's hours by 0.50 or $225 (time spent watching oral argument).

The Court declines to reduce all other contested hours as duplicative. For example, where two attorneys participated in a moot court to prepare for oral argument before the Ninth Circuit,

---

[3] As discussed above, Mr. Bechtold is not entitled to travel costs.

both may bill their time. *See Democratic Party of Wash. State*, 388 F.3d at 1287 ("A moot court

to prepare for argument in a case as important as this one is not unreasonable. Participation of

more than one attorney does not necessarily amount to unnecessary duplication of effort.").

### b. Excessive Hours

Defendants argue that Plaintiff's requested fees are excessive. Defendants note that

Plaintiff's original motion for fees is only eleven pages, the motion for fees filed with the Ninth

Circuit is only thirteen pages, and much of the memorandums appeared "to have been copied and

pasted." Def. Resp. 18. In sum, Defendants argue that "Plaintiff should not be compensated for

writing the same memorandum twice." *Id.*

Defendants misstate the record. While Plaintiff's two motions for fees may contain

similar arguments, counsels' work on the case is more extensive. For example, on appeal,

Plaintiff filed a forty-page opening brief, with two volumes of excerpts of record. The issue was

not simply the calculation of fees, but the question of causation.

Nevertheless, the Court finds that a ten-percent reduction of the requested fee is

appropriate. While Defendants have not identified specific entries they consider excessive, the

Court has reviewed counsels' timesheets and notes some unreasonable expenditures. For

example, Ms. Akland appears to have billed at least ninety hours in preparing for oral argument

alone. Ms. Akland also appears to have billed at least sixty hours in preparing the motions for

attorneys' fees. Given the narrow question of causation on appeal, and the routine and

duplicative motions for attorneys' fees, the Court exercises its discretion and reduces the

requested fee by ten percent. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir.

2008) ("the district court can impose a small reduction, no greater than 10 percent—a 'haircut'—

based on its exercise of discretion and without a more specific explanation.").

### c. Clerical Tasks

"It is well settled, both in this District and elsewhere, that it is inappropriate to seek fees under a fee shifting statute for purely secretarial or clerical work." *Lafferty v. Providence Health Plans*, No. 08-CV-6318-TC, 2011 WL 127489, at \*5 (D. Or. Jan. 14, 2011) (citing *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) ("[P]urely clerical or secretarial tasks should not be billed at a paralegal [or lawyer] rate regardless of who performs them . . . .")).

"Tasks considered clerical include, but are not limited to, filing motions with the court, filling out and printing documents, preparing affidavits and drafting certificates of service, organizing files, calendaring dates, rescheduling depositions, and sending documents." *Sterling Sav. Bank v. Sequoia Crossing, LLC*, No. 03:09–cv–00555–AC, 2010 WL 3210855 at \*7 (D. Or. Aug. 11, 2010); *see also Frevach Land Co. v. Multnomah County Dept. of Envtl. Servs.*, No. CV-99-1295-HU, 2001 WL 34039133, at \*12 (D. Or. Dec. 18, 2001) (tasks such as proofreading, indexing, or assembling documents are not compensable because they are overhead and thus already "reflected in the hourly billing rate.").

Plaintiff's submissions include hours associated with clerical tasks. For example, Plaintiff seeks to recover fees for scheduling emails and calendaring deadlines. The Court will not permit Plaintiff to recover many of these fees. The Court therefore accepts Ms. Akland's clerical reductions, *see* Decl. Akland Ex. A, ECF 67, and adds the following:

| Attorney: Akland | | | |
|---|---|---|---|
| Date | Description | Time | Hourly Rate |
| 10/17/17 | Emails with mediator and Tim re: schedule | 0.3 | 250 |
| 3/26/18 | Conference with co-counsel re: oral argument dates | 0.1 | 320 |
| 3/26/18 | ECF: gov't ltr re: availability; conference with co-counsel re: same. | 0.1 | 320 |
| 8/30/18 | ECF: Order | 0.6 | 320 |

| | | | |
|---|---|---|---|
| | affirming/reversing; conference with counsel and client; calendar deadlines.[4] | | |
| Total: | | 1.1 | $331 |
| Attorney: Dugan | | | |
| Date | Description | Time | Rate |
| 7/12/16 | Serve by certified mail; file return of service; docket all deadlines | 0.7 | 335 |
| 7/13/16 | Emails re Pro Hac Vice; complete forms; e-file | 0.1 | 335 |
| 10/17/17 | Reviewed modified scheduling order; docketed deadlines | 0.1 | 335 |
| 3/26/18 | Def's notice of unavailability dates; emails with co-counsel re: same | 0.1 | 335 |
| 10/30/18 | Email from court re status report/conference | 0.1 | 335 |
| Total: | | 1.1 | $368.5 |

### d. Reasonable Hourly Rate

In determining the reasonable hourly rate, the Court determines what a lawyer of comparable skill, experience, and reputation could command in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also Robins v. Scholastic Book Fairs*, 928 F. Supp. 1027, 1033 (D. Or. 1996). "[T]he relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). "The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987). Judges in the District of Oregon use the Oregon State Bar Economic Survey ("OSB Economic Survey") as a benchmark for assessing the reasonableness of hourly billing rates. *See* Local Rule 54-3 Practice Tip ("[T]he Court requests that fee petitions address the

---

[4] The Court notes that these hours are also duplicative, *see* Decl. Bechtold Ex. 2, ECF 69.

Economic Survey and provide justification for requested hourly rates higher than reported by the Survey."); *Roberts v. Interstate Distrib. Co.*, 242 F.Supp.2d 850, 857 (D. Or. 2002) (in determining the reasonable hourly rate, the District of Oregon uses the OSB Economic Survey "as an initial benchmark" and attorneys should "provide ample justification" for deviating from the Survey rates).[5] Courts may also consider "the novelty and difficulty of the issues, the skill required to try the case, whether or not the fee is contingent, the experience held by counsel and fee awards in similar cases." *Moreno*, 534 F.3d at 1114.

Plaintiff seeks fees based on an hourly rate of $210-320 for Ms. Akland, $435-450 for Mr. Bechtold, $324-325 for Ms. Smith, and $335 for Ms. Dugan. In support of these rates, Plaintiff provides information on the background and experience of each attorney, as well as a declaration from expert David Becker. Defendants object only to the requested hourly rates for Ms. Akland and Mr. Bechtold.

### i. Ms. Akland

Ms. Akland seeks fees for her work from 2015 through 2018. Ms. Akland originally sought rates at $210 per hour in 2015, $215 per hour in 2016, and $225 per hour in 2017. Beginning in August 2017, Ms. Akland sought a rate of $250 per hour. In January of 2018, she requested a rate of $320 per hour. In October 2018, she lowered her requested rate to $300 per hour.

Ms. Akland was admitted to the State Bar of Montana in September 2014. According to the 2017 OSB Economic Survey, the average hourly rate for Portland attorneys with zero to three years of experience was $236 per hour in 2016. Ms. Akland requests below average rates through August 2017. The Court finds these rates reasonable.

---

[5] The most recent OSB Economic Survey was published in 2017 and can be found at https://www.osbar.org/_docs/resources/Econsurveys/17EconomicSurvey.pdf

In August 2017, Ms. Akland began her fourth year of practice. According to the 2017 OSB Economic Survey, the average hourly rate for Portland attorneys with four to six years of experience was $249 in 2016. The 75th percentile hourly rate was $300 and the 95th percentile hourly rate was $350. The Court finds Ms. Akland's request for rates of $250 per hour to be reasonable.

Ms. Akland argues her hourly rates for 2018—$300 and $320—are also reasonable. These rates fall at the 75th percentile and 95th percentile for Portland attorneys with four to six years' experience. Ms. Akland argues that "real estate/land use/environmental law attorneys" bill at the highest rates in Portland, with an average hourly rate of $398 and a 75th percentile hourly rate of $475. She argues that OSB's rates from 2016 should be adjusted upwards for inflation and that she is a specialist in the field.

The Court finds $300 to be a reasonable hourly rate. While environmental law attorneys bill at the highest rates in Portland according to the OSB, the cited rate is deceptively high as it does not differentiate between years of practice. With less than five years in practice, Ms. Akland has not provided sufficient support for why she is a specialist in the field, whether through expertise, specialized knowledge, or experience. Indeed, Ms. Akland's experience remains at the low end of the four to six year category and does not justify fees in the 95th percentile. Ms. Akland appears to acknowledge this point by reducing her requested rate to $300 for her work in the district court in 2018.

Ms. Akland billed 183.5 hours (reduced for duplicative and clerical entries) at $320 per hour, for a total of $58,720. When billed at a rate of $300 per hour, this total is reduced to $55,050. The Court therefore reduces Ms. Akland's fee by $3,670.

### ii.      Mr. Bechtold

Mr. Bechtold seeks $400 per hour for his work in 2014 and 2015, $420 for his work in 2016, $435 per hour for his work in 2017, and $450 per hour for his work in 2018. Mr. Bechtold has practiced law for nineteen years. He specializes in litigating environmental matters. In addition to his law degree, he has an M.S. in Environmental Studies. Before entering practice, he clerked for the Chief Judge of the District of Montana for two years. He has guest lectured on environmental topics and taught a relevant graduate level course. He was chairman of the Federal Practice Section of the Montana State Bar Association from 2004-2012, President of the Montana Chapter of the Federal Bar Association from 2010-2012, and is currently President of the Board of the Montana Trial Lawyers Association.

According to the 2017 OSB Economic Survey, the average hourly rate for Portland lawyers with thirteen to fifteen years' experience was $288 in 2016. The 75th percentile hourly rate was $375, and the 95th percentile hourly rate was $460. The average hourly rate for lawyers with sixteen to twenty years' experience was $334. The 75th percentile hourly rate was $400, and the 95th percentile hourly rate was $500.

In 2014 and 2015, Mr. Bechtold had fourteen and fifteen years' experience, respectively. Between 2016 and 2018, Mr. Bechtold had sixteen to eighteen years' experience. In calculating his requested fees, Mr. Bechtold reports that "[b]ecause of an anomaly in the [2012] Oregon State Bar Economic Survey data which listed rates for attorneys with 16-20 years' experience as lower than those for attorneys with 13-15 years' experience, my requested rates are based on the average of the rates charged by attorneys with thirteen to fifteen years of experience and the rates charged by attorneys with twenty-one to thirty years of experience as set forth in *Currie v. Shaw*, 2014 WL 3514977." Decl. Bechtold 4, ECF 41-3. Although courts in this district have applied

these averaged rates in the past, this Court finds they are not applicable here. The 2017 OSB Economic Survey data—which the Court uses here—does not contain the same anomaly.

Like Ms. Akland, Mr. Bechtold argues for higher rates because he is a specialist in the field of environmental law. Real estate/land use/environmental law attorneys in Portland charge the highest hourly rates by type of law practiced. The average hourly rate in this category is $398. The 75th percentile hourly rate is $475 and the 95th percentile hourly rate is $619. Mr. Bechtold also argues the 2016 OSB rates should be adjusted for inflation.

Although Mr. Bechtold's rates are slightly higher than the 75th percentile hourly rate for Portland attorneys with commensurate years in practice, the Court finds these requested rates reasonable given the rates of Portland environmental law attorneys, and Mr. Bechtold's expertise, specialized knowledge, and experience.

### iii. Ms. Dugan

Defendants do not object to Ms. Dugan's requested rates of $335 per hour. Ms. Dugan has practiced law for twenty-six years, with much of that time focused on environmental litigation. According to the 2017 OSB Economic Survey, the average rate for lawyers in the Portland area with twenty-one to thirty years' experience was $394 per hour in 2016. Given Ms. Dugan's experience, and the fact that her requested rate falls below the Portland average, the Court finds this rate reasonable.

### iv. Ms. Smith

Defendants do not object to Ms. Smith's requested rates of $324 per hour in 2016, $334 per hour in 2017, and $350 per hour in 2018. Ms. Smith has practiced law since 2008, when she also received a M.S. in Environmental Studies. Her practice is focused on environmental litigation.

In 2016, the average rate for lawyers in the Portland area with seven to nine years of experience was $282 per hour. The 75th percentile hourly rate was $340 per hour. The average hourly rate for lawyers with ten to twelve years' experience was $288. The 75th percentile hourly rate was $350 per hour. The Ms. Smith argue her rates are reasonable when inflation and expertise are considered. Given these factors, and the rates of environmental attorneys in Portland, the Court finds Ms. Smith's requested rates reasonable.

## CONCLUSION

The Court grants Plaintiff's Motions for Attorneys' Fees [41] [57-1] in the amount of $201,093.66.[6]

Dated this 18 day of April , 2019.

_____
MARCO A. HERNÁNDEZ
United States District Judge

---

[6] The Court reached this total by first reducing the total fee ($230,676.79) by the specific reductions identified at length throughout this opinion. The Court then reduced the resulting amount ($223,437.40) by 10 percent.